Danny Edward HULL, Appellant,

v.

The STATE of Texas.

No. 1812–00.

Court of Criminal Appeals of Texas.

Jan. 30, 2002.

Kenneth W. Smith, Houston, for Appellant.

Carmen Castillo Mitchell, Asst. DA, Houston, Matthew Paul, State's Atty., Austin, for State.

## OPINION

MEYERS, J., delivered the opinion of the Court in which KELLER, P.J., PRICE, WOMACK, HERVEY, HOLCOMB, and COCHRAN, J.J., joined.

A jury found appellant guilty of injury to a child and assessed punishment at ten years in prison, probated for ten years, and a non-probated ten thousand dollar fine. The trial court placed appellant on "zero tolerance" probation.[1] Four months after appellant was placed on probation, the State filed a motion to revoke alleging that appellant violated the terms and conditions of his probation first by failing to report to his probation officer for the month of November 1998, and second by failing to present written verification of employment for the month of October 1998. Appellant pled "true" to the first allegation and "not true" to the second allegation. The trial court, finding that appellant had violated the conditions of his "zero tolerance" probation, revoked his probation and sentenced him to ten years confinement in the Texas Department of Criminal Justice, Institutional Division.

■ Appellant appealed the trial court's decision. Raising the issue for the first time on appeal, appellant argued that he was deprived of his liberty interests in remaining on probation without due process of law.[2] The Court of Appeals re-

claimed that he was denied a revocation hearing and sentencing by an impartial judge.

In addition to challenging the constitutionality of "zero tolerance" probation, appellant presented two other points of error. He alleged that the evidence presented at the revocation hearing was insufficient to support the trial court's revocation of his probation. Appellant also presented an ineffective assistance of counsel claim. Since appellant's first point of error was sustained by the Court

1. When appellant was placed on probation, the trial court admonished him that any violation of a condition of his probation would result in revocation.

2. Appellant argued that "zero tolerance" probation is a violation of due process because it represents a commitment to a predetermined outcome thereby precluding impartial consideration of relevant evidence and the full range of punishment at a probation revocation hearing. Moreover, as a result of this, appellant

versed the trial court's decision. *Hull v. State*, 29 S.W.3d 602 (Tex.App.-Houston [1st Dist.] 2000). We granted the State's petition in order to determine whether the Court of Appeals erred in holding that appellant did not waive his complaint regarding the trial court's "zero tolerance" probation even though appellant raised his complaint for the first time on appeal.[3] We hold that the Court of Appeals erred in so holding and consequently reverse its decision.

▪ Texas Rule of Appellate Procedure 33.1 provides in part that "as a prerequisite to presenting a complaint for appellate review," a timely request, objection or motion must be made and ruled upon by the trial court. This rule ensures that trial courts are provided an opportunity to correct their own mistakes at the most convenient and appropriate time—when the mistakes are alleged to have been made. *See Vidaurri v. State*, 49 S.W.3d 880, 886 (Tex. Crim.App.2001); *Aguilar v. State*, 26 S.W.3d 901, 905–906 (Tex.Crim.App.2000).

Appellant did not object to the "zero tolerance" policy until his direct appeal. He made no objection at the imposition of his conditions of probation, at which time the trial court admonished him that he would apply a policy of "zero tolerance." Neither did appellant object when his probation was revoked. The State argued before the Court of Appeals that appellant therefore waived any complaint about the trial court's "zero tolerance" policy.

The Court of Appeals rejected the State's contention. *Hull*, 29 S.W.3d at 606. The Court reasoned that because "zero tolerance" was not a listed condition in the judge's order, there was nothing to

object to at the time of sentencing. The Court further stated that because the written probation conditions stated that a violation thereof "may result" in revocation, appellant was entitled to rely upon that representation rather than the court's stated "zero tolerance" policy. Finally, the Court stated appellant had no grounds on which to move to recuse the judge until after the judge actually applied the zero tolerance policy and revoked appellant's probation, at which time a recusal would have been worthless. *Id.*

▪ The Court of Appeals erred in so holding. There was plenty to object to at the sentencing hearing. Contrary to the Court of Appeals' reasoning, the policy does not have to be one of the written conditions for the parties to be made aware of its existence and impact on the written conditions. A trial court's stated order does not have to be written to be binding or to have meaning. The policy was presented as the standard by which the written conditions would be administered by the court and violations viewed. The trial court's reference to it at the revocation hearing indicates that appellant was informed of the court's policy in no uncertain terms:

> *I told you when you got probation, if you violated your probation in any way, shape, or form I was going to revoke that probation.* I am a man of my word, and I am going to carry out what I told you when I gave you this probation. You did not have an option at all to do anything other than every single rule in this probation every step of the way exactly as instructed by me

of Appeals, it never addressed these other points.

**3.** We also granted review on the question of whether the Court of Appeals erred in holding that the trial court abused its discretion in

revoking appellant's probation. Due to our disposition of the State's first argument, we need not address this other ground in this opinion and dismiss it as moot.

and the probation department.... And I gave you every condition of probation that I could think of in order to ensure that you would be strictly monitored and that you would follow these rules, because *I told you that you were under zero tolerance*, which meant if you violated in any way, shape or form, you were going to be back here in an orange jumpsuit.

(Emphasis added). The record reflects that appellant understood the policy in this way. He was not confused by the court's admonishment in light of the written conditions. Appellant's testimony at the revocation hearing indicated an understanding and acceptance of the trial court's stated "zero tolerance" policy. As pointed out by Justice Taft, in dissent to the denial of en-banc review in the Court of Appeals:

> This is not a case in which appellant, Danny Edward Hull, violated the terms and conditions of his probation and the trial court surprised appellant by suddenly springing a zero tolerance policy, saying "Gotcha!" The Panel Opinion's rendition of the trial court's remarks before revoking appellant's probation clearly shows that the trial court had admonished appellant at the time probation was assessed that any violation of even a single condition of his probation would result in revocation. Indeed, when appellant took the stand at the revocation hearing, the third question from his attorney was, "At the time that you were granted probation, you were aware that the Judge had placed you on what's called a zero tolerance probation?" Appellant answered that he knew that. The next question elicited that appellant knew what zero tolerance probation meant. Later, appellant's counsel repeated inquiries demonstrating that appellant understood what kind of probation the trial court had given him, and appellant acknowledged that he

had taken the trial court seriously. Finally, appellant was asked what he wanted the trial court to do, and he said, "To take off zero tolerance and give me a chance."

*Id.* at 607 (Taft, J., dissenting from denial of en-banc review).

The record reflects that appellant understood the "zero tolerance" policy to be overriding and controlling. At the very least appellant could have objected to a discrepancy between the written conditions and the court's stated policy. The Court of Appeals erred in concluding that the written conditions of probation somehow excused appellant from objecting to the trial court's stated policy toward appellant's probation. Appellant was fully aware of the court's policy toward his probation and did not object. Appellant did not preserve the issue.

Accordingly, we vacate the judgment of the Court of Appeals and remand this case to that Court for consideration of appellant's remaining points of error.

KEASLER, J., filed a concurring opinion.

JOHNSON, J., filed a dissenting opinion.

KEASLER, J., filed this concurring opinion.

I concur in the Court's judgment.

Hull claims that the trial court predetermined the decision to revoke and was therefore biased. But the facts of this case do not show a predetermined decision to revoke probation.

In July of 1998, a jury convicted Hull of injury to a child and sentenced him to ten years in prison, probated for ten years. The trial court orally admonished Hull at that time that he was placing Hull on "zero

tolerance" probation. Four months later, the State filed a motion to revoke Hull's probation, alleging that he failed to report in November, 1998, and failed to present written verification of employment for the month of October, 1998. Hull pleaded true to the first allegation and not true to the second.

At the revocation hearing, the evidence revealed that Hull was placed on probation July 16th and was required to serve 90 days in jail as a condition of probation. He was released from jail on October 14th and reported to his probation officer for the first time on October 19, 1998. They met again on October 30th, and Hull's next scheduled visit was November 6th at 9:30 a.m. Hull informed his probation officer during his first two visits that he was employed, but he did not provide written verification of employment. He did provide written verification at the revocation hearing, showing that he had acquired three jobs—at Roadway Express, at the Houston Chronicle, and at Chevron—within the first three weeks of being released from jail. No explanation was given for Hull's failure to provide written proof of his employment to his probation officer during the first two visits.

The evidence showed that Hull failed to report as required on November 6th due to an incident involving his son at school. Before the incident, Hull had worked 16–hour shifts the previous three days in a row. Then, on the morning of November 6th, when Hull was at work, the school called Hull's wife to tell her that two boys had beaten up their kindergarten-aged son and urinated on him. She in turn called Hull. He immediately came home, and they went together to pick up their son. Hull testified that he didn't report to his probation officer as scheduled because, "after dealing with that issue, I was just very tired; and honestly, it just slipped my mind. I fell asleep." When he woke up, he remembered the missed appointment and immediately called in, sometime after 2:30 p.m.

Hull testified that he accepted responsibility for the missed appointment. He also testified as follows: "I was found guilty. I feel like the jury made a decision of sound mind and with faith, so I have to accept it. I don't agree with it, but I accept it." Additional evidence from the hearing revealed that Hull's family was in dire financial straits while he served his 90 day jail term, and that if his probation were revoked, his family would again be financially devastated. Hull asked that the trial court take him off "zero tolerance" and continue him on probation.

After the attorneys' arguments, the trial court made the following comments, which form the basis of Hull's complaint on appeal:

> Stand up, Mr. Hull. Mr. Hull, even to this very day you come before me telling me that you, quote, unquote, accept responsibility and yet continue to deny your guilt in this matter in the face of overwhelming evidence. I seem to have heard that many, many times on the news lately.
>
> Mr. Hull, I told you when you got probation, if you violated your probation in any way, shape, or form I was going to revoke that probation. I am a man of my word, and I am going to carry out what I told you when I gave you this probation. You did not have an option at all to do anything other than every single rule in this probation every step of the way exactly as instructed by me and the probation department.
>
> You know, here you come again. It's all about poor Mr. Hull and his family. This case is and always has been about Marcus King, a three-year-old child, going to the hospital with a broken rib and

a punctured lung because of your conduct.

Now, for reasons that I fail to understand, the jury having found you guilty, gave you the opportunity to have probation. And I gave you every condition of probation that I could think of in order to ensure that you would be strictly monitored and that you would follow these rules, because I told you that you were under zero tolerance, which meant that if you violated in any way, shape or form, you were going to be back here in an orange jumpsuit. You lasted 24 whole days on your probation after you got out of jail before you violated the rules of probation. This is one case where I can right a wrong. My only regret in this situation is that I am limited by the amount of punishment that I can assess you at ten years. But the jury made that choice and I have to live with it and you have to live with it.

Having said that, I revoke your probation. I sentence you to ten years confinement in the Texas Department of Criminal Justice, Institutional Division. I will give you credit for your back time. See the bailiff.

The judgment reflects that the trial court found both alleged probation violations to be true.

The trial court's comments at the conclusion of the hearing, though undoubtedly harsh, reflect a reasoned response to the evidence admitted at the hearing, not a predetermined decision to revoke. Several comments by the judge demonstrate that the judge considered the evidence before him. First, the judge expressed disapproval for Hull's failure to accept responsibility. The judge stated, "Mr. Hull, even to this very day you come before me telling me that you, quote, unquote, accept responsibility and yet continue to deny your guilt in this matter in the face of overwhelming evidence." Since Hull testified that he did not agree with the jury's verdict, the judge's comment reflects that the judge considered the evidence from the hearing. The judge also remarked that Hull attempted to put the focus on himself and his family without ever discussing the victim in the case, again showing that the judge did consider the evidence adduced at the hearing. Finally, the judge pointed out that Hull lasted only 24 days on his probation before a violation occurred, again demonstrating that the judge considered the evidence admitted at the hearing. Despite the judge's comments to the contrary, the record reflects that the judge's decision to revoke was not based solely on his "promise" to revoke. Instead, the record reveals that despite any previous promise to revoke, the judge made the eventual decision to revoke based on the evidence presented at the hearing.

Because these facts do not show a predetermined decision to revoke, I concur in the Court's judgment.

JOHNSON, J., filed a dissenting opinion.

I respectfully dissent. The majority bases its decision on appellant's failure to preserve error and holds that appellant waived his complaint. This, however, is a case in which the trial court made it very clear that, in its opinion, the jury had made a gross error in granting probation and that the trial court was going to find a way to correct for the jury's poor judgment. The trial court first states, "[F]or reasons that I fail to understand, the jury having found you guilty, gave you the opportunity to have probation."[1] *Hull v.*

1. Appellant's probation officer testified that her caseload was between 120 and 130 cases, and only appellant's probation was "no tolerance." *Hull,* 29 S.W.3d at 605.

*State*, 29 S.W.3d 602, 604 (Tex.App.-Houston [1st Dist.] 2000). After excoriating appellant, the trial court then said, "This is one case where I can right a wrong. My only regret in this situation is that I am limited by the amount of punishment that I can assess you at ten years. But the jury made that choice and I have to live with it and you have to live with it." *Id.* He then informed appellant that he was imposing "zero tolerance" probation conditions.

It is axiomatic that the law does not require a futile act. Clearly, the trial court believed that appellant should be incarcerated for a long time and intended to give effect to its personal judgment despite the judgment of the community, in the form of the jury, to the contrary. Any attempt by appellant to challenge "zero tolerance" risked the high probability of assessment of even harsher terms of probation by an even more irate trial court. The court of appeals correctly analyzed the situation when it said, "These remarks show that the judge had committed himself to revoke probation for any violation whatsoever, no matter what exigent circumstances existed. This was error. It rendered him unable to apply the law the legislature enacted." *Id.*

A motion to recuse would have been equally futile and destined to provoke the increased wrath of the trial court. The judge, by his own words, made clear that he was going to correct the jury's "error." Can we say, then, that he would have, if asked, entrusted sentencing to another judge, who might actually consider the facts? Or that he would give appropriate consideration to a motion for resentencing? I think not.

In his concurrence, Judge Keasler asserts that the trial court's actions "reflect a reasoned response to the evidence admitted at the hearing, not a predetermined decision to revoke." *Ante*, at 220. Judge Keasler also asserts that "[d]espite the judge's comments to the contrary, the record reflects that the judge's decision to revoke was not based solely on his 'promise' to revoke." *Id.* at 220. How do we reconcile a record which contains statements by the trial judge that reveal a predetermined decision to revoke with the discounting of those statements? How can we claim to know better than the judge himself what the judge intended? When one's own words convict, this Court should not acquit.

While I do not agree entirely with the reasoning of the court of appeals, I believe that it was correct in its result. I would affirm the judgment of the court of appeals.