IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. AP-73,932






EX PARTE JAMES OTIS BROWN, Applicant





ON APPLICATION FOR A WRIT OF HABEAS CORPUS


FROM DALLAS COUNTY






 Per Curiam. Hervey, J., dissented. Keller, P.J., joined by Hervey,
J., filed a dissenting opinion. Womack, J., filed a dissenting opinion. Keasler, J.,
joined by Keller, P.J. and Hervey, J., filed a dissenting opinion.


O P I N I O N 


 

 In this post-conviction application for a writ of habeas corpus, applicant asserts
that Judge Baraka, the original trial court judge, violated his right to due process because
he refused to consider the full range of punishment at the hearing on the State's motion to
adjudicate. We agree with applicant and therefore grant relief.

I.


 Applicant was charged with robbery. He pleaded guilty on July 12, 1989, and
Judge Baraka deferred any finding of guilt and placed him on probation for four years. 
Shortly thereafter, applicant violated the conditions of his probation by failing to report to
the probation officer in August, September, and October, and by failing to pay his
probation fees, fine, and restitution. At the adjudication hearing, applicant pleaded "true"
to the allegations and testified:

 Defense: What can you tell the Judge, for what good reason can you
give him for having not [abided by the probation conditions]?

 Applicant: There was really no good reason, Your Honor.

 Court: You're not asking me to do anything but what I said, aren't
you. I told you what I was going to do if you did this, didn't
I?

 Applicant: Yes, sir. Your Honor.

 Court: So tell me what it is that you're going to ask me to do.

 Applicant: I'm going to ask you to reinstate me.

 Court: Go on. I'm listening.

 Applicant: I'm just going to ask you to reinstate me.

 Court: Remember that long conversation I had when I put you on
probation?

 Applicant: Yes, sir, Your Honor.

 Court: And you can look me in the eye, and you're actually going to
ask me that?

 Applicant: Yes, sir.

 Court: Okay. Anything else?

 Defense: Anything else you want to add?

 Applicant: The reason why I didn't report [was] because I had a lot of
problems since day one when I got out of jail. I was smoking
crack.

 Court: That is strong.

 Applicant: It's terrible.

 Court: What did I tell you when you got out and you had some
problems?

 Applicant: To come see you.

 Court: Some [sic] and see me. If you had a drug problem, I'd help
resolve that for you. Didn't I tell you that?

 Applicant: Yes, sir.

 Court: If you needed a job, come to me, I'd find you a job. Didn't I
tell you that?

 Applicant: Yes, sir, Your Honor.

 Court: If you need a place to live, come to me. I'll find you a place
to live. Didn't I tell you that.

 Applicant: Yes, sir.

 Court: But I said, sir, don't fail to report. Don't ever do it. Didn't I
tell you that?

 Applicant: Yes, sir.

 Court: I told you what I'd do about it if you did.

 Applicant: You said you'd give me twenty years.

 Court: Watch me. Pay attention. Anything further?


There was nothing further, and Judge Baraka sentenced applicant to twenty years in
prison, the maximum punishment. Applicant did not object. His conviction was affirmed
on appeal. (1)

 Applicant then filed a writ of habeas corpus alleging that: 1) the trial judge denied
him due process of law by prejudging his punishment; 2) his trial counsel rendered
ineffective assistance of counsel by failing to object to the trial court's sentencing
procedure; and 3) his appellate counsel rendered ineffective assistance of counsel by
filing an Anders (2) brief which stated that there were no grounds that would warrant
reversal.

 At the time applicant filed his habeas writ, Judge Baraka was no longer the
presiding judge of the convicting court. He had been succeeded by Judge King who made
factual findings, including one that:

 there are a number of cases on the books which remanded cases back to the
Criminal District Court No. 2 due to Judge Baraka's promises made at the
time the defendant was placed on probation. [footnote: See, Jefferson v.
State, 803 S.W.2d 470 (Tex. App. - Dallas 1991, pet. ref'd); Earley v. State,
855 S.W.2d 260, 262 (Tex. App. - Corpus Christi 1993, pet. dism'd);
Howard v. State, 830 S.W.2d 785 (Tex. App. - San Antonio 1992, pet.
ref'd).] For a period of time when Judge Baraka would place a defendant
on probation he told them if they "messed up" he would give them the
maximum sentence at the revocation hearing. The statement of facts
attached to the application for writ of habeas corpus indicate[s] that this
case is another example of Judge Baraka prejudging punishment. The court
finds that the record supports Applicant's claim that he was promised the
maximum sentence in this case if he messed up on probation and at the
revocation hearing Judge Baraka imposed the promised sentence without
consideration of any evidence. The court finds that Applicant is entitled to
a new revocation hearing.


After reviewing the writ application, attached materials, and Judge King's Findings of
Fact and Conclusions of Law, this Court remanded to the trial court for further findings
and conclusions. First, we asked the trial court to consider whether applicant's due-process claim could be brought for the first time on a writ of habeas corpus when other
probationers, as noted by Judge King, had brought this same claim by direct appeal. 
Normally, the writ of habeas corpus cannot be used to litigate matters that could have, and
therefore should have, been raised on direct appeal. Second, we asked the trial court to
give Judge Baraka an opportunity to testify or otherwise explain on the record whether he
had, in fact, prejudged applicant's punishment. Although the bare record could support a
finding of punishment prejudgment-that Judge Baraka was simply carrying out the
"promise" he made when he placed applicant on probation to give him the maximum
punishment if he violated any condition of probation-there might also be other reasons,
not apparent on the record, which would explain Judge Baraka's sentence.

II.


 On remand, a new district court judge, Judge Stricklin, found that applicant could
not raise his due-process claim by writ of habeas corpus. Noting that the issue of
prejudgment of punishment is an issue that can be appealed, the trial court found that the
record did not justify applicant's failure to raise the issue on appeal. (3) Thus, the trial
judge concluded, as a matter of law, that applicant was procedurally barred from raising
the issue on a writ.

 This is a conclusion of law that we review de novo. Although no appeal may be
taken from a trial court's decision to proceed with adjudication of guilt, the deferred-adjudication statute expressly permits a defendant to appeal the assessment of
punishment. Article 42.12, section 5(b) states: "After an adjudication on guilt, all
proceedings, including assessment of punishment, pronouncement of sentence, granting
of community supervision, and defendant's appeal continue as if the adjudication of guilt
had not been deferred." Because applicant could have raised his due-process claim of
prejudgment of punishment on direct appeal, he ordinarily would not be entitled to raise
the issue by writ. 

 However, this particular case demonstrates an exception in which a habeas
applicant may raise his due-process claim for the first time by writ of habeas corpus. As
with the vast majority of claims of ineffective assistance of counsel, the trial record is
insufficient to allow an appellate court to resolve the issue. Judge Baraka's
admonition-that he would impose the maximum sentence if applicant violated his
probation-does not, by itself, show prejudgment of punishment. In the absence of other
evidence or indications of prejudgment in the trial record, an appellate court could not
resolve this claim. Two types of extra-record evidence, in particular, are useful to the
resolution of a due-process issue of prejudgment of punishment. 

 First, a court could examine other cases from Judge Baraka's court to determine
what types of cases, and how often, the judge threatened to impose the maximum
sentence, and how often he actually did assess such a sentence. That is the evidence that
Judge King relied upon in finding that Judge Baraka did prejudge the sentence in this
case. That pattern of prejudging punishment could not be shown by looking only to the
trial court record in applicant's case. But that was the only extra-record evidence that
Judge King relied upon.

 A second, even more important, type of relevant information not contained in the
trial record would be Judge Baraka's testimony or statements on this issue. Because
applicant could not provide such evidence without going outside the trial record, he, like
those defendants claiming ineffective assistance of counsel, may raise his due-process
claim by writ of habeas corpus.

 Therefore, we cannot adopt Judge Stricklin's conclusion of law that applicant
waived his due-process claim by failing to raise it on direct appeal.

III.


 Judge Stricklin also found that Judge Baraka did not prejudge applicant's
punishment and concluded that applicant had failed to prove a due-process violation. 
Based on testimony offered at the hearing on remand, the trial court found that Judge
Baraka imposed the maximum sentence based on what he "learned about the applicant
from what was before him during the original plea and revocation hearing." We conclude
that the habeas record does not support the trial court's conclusion.

 In McClenan v. State, (4) we noted, in dictum, that "[a] court's arbitrary refusal to
consider the entire range of punishment would constitute a denial of due process[.]" (5)
Texas trial courts have wide discretion in determining the proper punishment in a
revocation hearing, but due process guarantees a defendant the right to a hearing before a
"neutral and detached hearing body." (6) One federal court has stated, in holding that Judge
Baraka prejudged a probationer's punishment:

 [A] defendant is entitled to a probation revocation hearing before a judicial
officer who has not predetermined that probation should be revoked or that
a particular punishment should be imposed. (7)


In supervising a probationer, a trial judge must "constantly remember that he may one day
be cast in the role of trier of fact in a revocation proceeding, and that in that event he will
be required to disqualify himself unless he has refrained from prejudgment." (8)

 In this case, the habeas judge, Judge Stricklin, noted that "Judge Baraka testified
that the lack of mitigating evidence at the adjudication hearing led him to impose the
maximum sentence." Judge Baraka did testify that he would have considered any
mitigating evidence:

 Q: (by the State's attorney) If he had presented any substantial excuse or
some substantial mitigating evidence, would you have taken that into
consideration?


 A: Sure, always. You never know. Sometimes, as they say, truth is
stranger than fiction. I have had - for instance, it was known that if
you failed to report, you are absolutely going to the penitentiary. 
Well, in 99.2 percent of the time, it was probably true; but I have had
some people who come forth and based on all the facts and
circumstances, I could put myself in the place of a person who may
be distraught, not thinking right, making the right choices; and if
those are giving me the options, I probably would not send them to
the pen; but, you know, my main thing oftentimes was just to try to
get their attention.


 Q: You wanted to impress upon them the seriousness of the situation?


 A: If it was with him, him, and whoever was watching that was ready to
come before me.


 Here, Judge Baraka testified that he would have considered mitigating evidence in
deciding whether to revoke probation. He would, he said, consider the fact that a person
was "distraught, not thinking right, making the right choices." In that case he might not
revoke probation and "send them to the pen." That testimony tells us nothing, however,
about whether Judge Baraka carried through on his original promise to applicant to
impose the maximum sentence if he did, in fact, revoke probation. 

 Judge Baraka forthrightly acknowledged that he could not remember anything
about this case; he was basing his testimony on nothing more than his usual routine and
his review of the statement of facts in this case. From that review it looked to him as if he
was simply making good on a promise he had made during the original plea hearing:

 Q: (By applicant's attorney) And it is my understanding that after
reviewing the information that was provided to you that you have no
personal recollection of this gentleman who is sitting next to me as
James Otis Brown?

 

 A: No, I do not.

 

 Q: And-but you don't remember the circumstances of why he appeared
before you on the original plea or his revocation?

 

 A: I haven't a clue. Even now, to be honest with you, I don't know.

 

 Q: Okay. You made the statement that, "Based upon my reading and
interpretation, it would appear that I had advised Mr. Brown that he
would receive a 20-year sentence if he violated the terms and
conditions of his probation." (9)

 And that was a statement you made after reading the transcript of the
original plea; is that correct?


 A: Correct.

 

 Q: And you also state, "Upon revocation, I apparently sentenced Mr.
Brown to 20 years."

 Fulfilling that promise is a reasonable interpretation of what
could be made from that; is that correct?

 

 A: Correct.

 

 Q: Okay. But other than the interpretation that there was a prejudgment
because he did receive what he was promised, you don't have any
specific recollection as to why him particularly one way or another?

 

 A: No, not with him particularly.

 

 Q: Or what facts went into your judgment in setting the sentence at that
point?

 

 A: With regard to him specifically, no.


 Further, Judge Baraka, responding to applicant's counsel's question about trial
counsel's performance, said:

 A: . . . Sometimes mitigating evidence is nothing, just a guy giving me
an excuse. Sometimes it has a value.


 Q: It could have a value?


 A: Correct. But, as I said, in interpreting his case, I don't know him
personally. I don't know all the things I said to him.

 In writing the affidavit, I tried to be as honest and straight
with it, and give him the benefit of the doubt, in fact; and by reading
it, I have interpreted that I could have very well told him, in advance,
that if I saw you again, you are going to get 20 years, and gave it to
him, because generally, if I said I was going to do something --
probably until the time that the Court of Criminal Appeals told me
that I can't do it; but generally when I told a person that I was going
to do something, I rarely failed to do it.

 

 Judge Baraka's testimony does not support the conclusion that he did not prejudge
applicant's punishment. Although he testified that he did not remember applicant at all,
he normally-- or as he put it, in 99.2% of the cases-- followed through on the punishment
he had promised a defendant at the time of placing a defendant on probation. There is
nothing in this record to suggest that applicant's case falls into the .8% of the cases in
which Judge Baraka did not follow his normal routine. 

 Judge Baraka promised applicant at the original plea hearing that he would impose
the maximum punishment of 20 years if applicant failed to report to his probation officer. 
He reminded applicant at the adjudication hearing of this earlier colloquy, and applicant
agreed "You said you'd give me twenty years" if applicant failed to report to his
probation officer. Judge Baraka then sentenced applicant to 20 years imprisonment,
exactly as he had previously promised. There is nothing in the habeas record on remand
which contradicts this promise of 20 years' imprisonment and its imposition should
applicant fail to report to his probation officer. (10) 

 As noted above, a trial court's arbitrary refusal to consider the entire range of
punishment in a particular case violates due process. (11) A trial judge may certainly
impress upon a prospective probationer the seriousness of the possible consequences of a
failure to abide by the terms and conditions of probation, but it is an altogether different
thing to promise to impose the maximum punishment if a prospective probationer fails to
abide by the terms of probation and then carrying through on that promise without
"actually consider[ing] the evidence presented at the revocation hearing." (12)

 Given the state of this record, we conclude that the record continues to support
Judge King's original habeas finding-also based on a reading of the very same statement
of facts from the original plea hearing-that "this case is another example of Judge Baraka
pre-judging punishment." (13) 

 Although we adopt the trial court's finding that applicant failed to show that Judge
Baraka prejudged the decision of whether to revoke probation, we find that the record
does not support the further finding that Judge Baraka did not prejudge the punishment to
be assessed once he did decide to revoke probation.

 For this reason, we grant relief and remand this case to the trial court at the point
immediately after the adjudication of guilt. The trial court should re-assess an appropriate
sentence within the entire punishment range. Copies of this opinion shall be sent to the
Texas Department of Criminal Justice, Institutional Division.

 

Delivered: January 12, 2005

Publish
1. Brown v. State, No. 05-90-00306-CR (Tex. App. - Dallas, filed February 26, 1991, pet.
ref'd).
2. See Anders v. California, 386 U.S. 738 (1967).
3. Applicant also failed to object to Judge Baraka's sentence in the trial court. In Hull v.
State, 67 S.W.3d 215 (Tex. Crim. App. 2002), we held that a defendant who failed to object to
the imposition of "zero tolerance" probation forfeited his right to complain about that condition
on appeal. In that case, the defendant did not object at the time the trial judge orally imposed the
"zero tolerance" probation condition, and he did not object at the time his probation was revoked. 
In Hull, unlike the present case, the trial "record reflects that appellant understood the 'zero
tolerance' policy to be overriding and controlling. ... Appellant was fully aware of the court's
policy toward his probation and did not object." Id. at 218. 

 In the present case, the record shows that applicant was aware that the trial judge had
"promised" to revoke his probation if he violated any of the probation conditions and that he had
"promised" to impose the maximum prison sentence if applicant violated those conditions. Here,
however, Judge Baraka imposed the maximum sentence without any explanation for its basis. 
He might have imposed that sentence for very good reasons, based upon applicant's underlying
robbery offense and because of the seriousness of the probation violations. In this particular
situation, as with many ineffective assistance of counsel claims, the trial record, by itself, is not
necessarily adequate for the defendant to object and present a valid constitutional claim at the
time of the conduct. 
4. 661 S.W.2d 108 (Tex. Crim. App. 1983), overruled on other grounds by De Leon v.
Aguilar, 127 S.W.3d 1 (Tex. Crim. App. 2004).
5. Id. at 110.
6. Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973).
7. Gonzales v. Johnson, 994 F. Supp. 759, 762 (N.D. Tex. 1997).
8. United States v. Sciuto, 531 F.2d 842, 846 (7th Cir. 1976).
9. The statement was made in an affidavit admitted as an exhibit at the hearing. That
affidavit read, in its entirety:

 

 I, Larry W. Baraka, swear that the foregoing statement is true and correct. 

 I have no personal recollection of Mr. James Otis Brown, nor the circumstances of his
appearance before me. 

 I have read the statement of facts. Based upon my reading and interpretation, it would
appear that I had advised Mr. Brown that he would receive a 20 year sentence if he violated the
terms and conditions of his probation.

 Upon revocation, I apparently sentenced Mr. Brown to 20 years in the Texas Department
of Corrections.
10. Judge Baraka's testimony, that if a defendant provided particularly persuasive
mitigating evidence then he might back away from his original "promise" to revoke probation
and send the probationer to the penitentiary, does not detract from the force of his original
promise that he would, if he did revoke probation, sentence applicant to 20 years. 
11. See McClenan v. State, 661 S.W.2d 108, 110 (Tex. Crim. App. 1983); see also Earley
v. State, 855 S.W.2d 260, 262-63(Tex. App. - Corpus Christi 1993), pet. dism'd, 872 S.W.2d
758 (Tex. Crim. App. 1994) (concluding that Judge Baraka prejudged punishment when
adjudicating defendant); Jefferson v. State, 803 S.W.2d 470, 472 (Tex. App. - Dallas 1991, pet.
ref'd) (same); see also Gonzales v. Johnson, 994 F. Supp. 759, 762 (N.D. Tex. 1997) (granting
federal habeas relief after concluding that Judge Baraka prejudged punishment when adjudicating
defendant; stating that "[a] 'neutral and detached' decisionmaker does not prejudge evidence he
has not seen. ... Thus, a defendant is entitled a probation revocation hearing before a judicial
officer who has not predetermined that probation should be revoked or that a particular
punishment should be imposed") (citations omitted). 
12. Gonzales, 994 F. Supp. at 764. 
13. At the hearing on remand, applicant also called a Dallas County criminal defense
attorney who had investigated numerous cases in which defendants had alleged prejudgment of
punishment by Judge Baraka. This attorney claimed that the judge maintained a "hit list" with
which he would keep track of the sentences he had "promised" defendants and he would assess
those "promised" sentences upon revocation of probation. This attorney stated that there were
"hundreds" of cases in which Judge Baraka had prejudged punishment.