

# NUMBER 13-11-00177-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**GERALD MORA,**                                                                        **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                              **Appellee.**

### On appeal from the 319th District Court
### of Nueces County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Vela
Memorandum Opinion by Justice Rose Vela**

A Nueces County grand jury indicted appellant, Gerald Mora, on nine counts of aggravated sexual assault of a child, *see* TEX. PENAL CODE ANN. § 22.021 (West Supp. 2011), five counts of indecency with a child by sexual contact, *see id.* § 21.11(a)(1) (West 2011), one count of sexual assault of a child, *see id.* § 22.011(a)(2), and one count of sexual assault. *See id.* § 22.011(a)(1). The indictment alleged one prior felony

conviction for enhancement purposes. Pursuant to a plea agreement, appellant pleaded guilty to the offenses and "True" to the enhancement allegation. The trial court placed him on ten years' deferred-adjudication community supervision.

Following a revocation hearing, the trial court revoked his community supervision, adjudicated him guilty of the underlying offenses, and assessed a life sentence for each offense. In eight issues, which are consolidated into five, appellant asserts: (1) he was denied his liberty interest without due process of law; (2) zero tolerance is not a reasonable condition of community supervision in conformity with article 42.12, section 11 of the Texas Code of Criminal Procedure; (3) zero tolerance is not a reasonable condition of community supervision; (4) the term "zero tolerance" is too vague to give reasonable notice of his conditions of community service; and (5) he was not admonished about his right to testify, he was denied his right to testify because of a speech impairment, he was denied his right to effective assistance of counsel, and he was denied his rights under the Americans With Disabilities Act. We affirm.

## I. DISCUSSION

## A. Denial of Liberty Interest Without Due Process of Law

In issue one, appellant contends he was denied his liberty interest without due process of law because a condition of his community supervision; i.e., zero tolerance, arbitrarily denied him the full range of statutory discretion because he was not admonished that any violation of the conditions of his community supervision would result in revocation.

## 1. Background

The plea agreement,[1] which is part of the appellate record, stated, in relevant part, that "[i]n consideration of the defendant's plea of guilty . . . the State agrees:  . . . To recommend to the Court that as a condition of community supervision, the Defendant be ordered to:  . . . Zero Tolerance[.]"  Appellant, his defense counsel, and the prosecutor signed the plea agreement.

During the plea hearing, after the trial court accepted appellant's guilty pleas to the offenses as well as his plea of true to the enhancement allegation, the prosecutor stated:

> In consideration of the defendant's pleas of guilty, and also in consideration of what the victim and her family have expressed to the D.A.'s office in their wishing to have this case resolved, we're asking that the Court consider an agreed plea recommendation and place the defendant on deferred adjudication for a period of 10 years, that he be assessed a fine of $2500, that he be ordered to pay $50 to the Children's Advocacy Center of the Coastal Bend, that his probation also contain all of the sex offender caseload conditions, and that he be placed on a zero tolerance caseload. . . .

After the prosecutor made these statements, the trial court told appellant the following:

> Then Mr. Mora [appellant], I understand that you and the State have entered into a plea agreement.   The plea agreement calls for the Court not to make a finding of guilt, to defer further proceedings, place you on community supervision for a period of 10 years, the State is recommending a fine of $2,500, that you make a onetime payment of fifty dollars to the Children's Advocacy Center, that there be zero tolerance, . . . .

Afterwards, the court asked, "Is that a complete and accurate statement of the plea agreement that you have entered into with the State?"   To this, defense counsel stated, "Yes."   When the trial court asked, "And do you understand the plea agreement?",

---

[1] During the plea hearing, the trial court admitted the "PLEA AGREEMENT" into evidence as State's exhibit one.

3

defense counsel said, "Yes." When the trial court asked, "And do you want the Court to accept, approve, and follow the plea agreement?", defense counsel said, "Yes." Afterwards, the trial court announced the court "will follow the plea agreement. . . . The Court will place you on the sex offender caseload, zero tolerance, . . . ."

### 2. Preservation of Error

"As a prerequisite to presenting a complaint on appeal, a party must have made a timely and specific request, objection, or motion to the trial court." *Grant v. State*, 345 S.W.3d 509, 512 (Tex. App.—Waco 2011, pet. ref'd) (citing TEX. R. APP. P. 33.1(a)(1)(A)). "This rule ensures that trial courts are provided an opportunity to correct their own mistakes at the most convenient and appropriate time—when the mistakes are alleged to have been made." *Hull v. State*, 67 S.W.3d 215, 217 (Tex. Crim. App. 2002).

In *Hull*, the defendant, who had his community supervision revoked pursuant to the trial court's policy of zero tolerance, argued on appeal that the policy of zero tolerance "deprived [him] of his liberty interests in remaining on probation without due process of law." *Id.* at 216. The State responded that the defendant "waived any complaint about the trial court's 'zero tolerance' policy." *Id.* at 217. The court of criminal appeals noted the defendant did not object to the policy of zero tolerance during the imposition of his conditions of community supervision, at which time the trial court told him the court would apply a policy of zero tolerance. *Id.* In addition, the defendant did not object to the policy of zero tolerance when the trial court revoked his community supervision. *Id.* In agreeing with the State's argument, the court of criminal appeals stated:

> [T]he [zero tolerance] policy does not have to be one of the written conditions [of community supervision] for the parties to be made aware of its

4

existence and impact on the written conditions. A trial court's stated order does not have to be written to be binding or to have meaning. The policy was presented as the standard by which the written conditions would be administered by the court and violations viewed.

\* \* \*

At the very least appellant could have objected to a discrepancy between the written conditions and the court's stated policy. The Court of Appeals erred in concluding that the written conditions of probation somehow excused appellant from objecting to the trial court's stated policy toward appellant's probation. Appellant was fully aware of the court's policy toward his probation and did not object. Appellant did not preserve the issue.

*Id.* at 217–18.

In the present case, appellant, his defense counsel, and the prosecutor signed the plea agreement, which stated that in consideration of appellant's guilty plea, the State agrees to recommend as a condition of community supervision "Zero Tolerance[.]" During the plea hearing, the trial court announced that zero tolerance was part of the plea agreement, and the court stated the court would follow the plea agreement. Based upon the written plea agreement as well as the trial court's oral pronouncements, we conclude appellant and his defense counsel were aware that zero tolerance was part of the plea agreement and that the court intended to follow the application of zero tolerance. Because defense counsel made no objection to the application of zero tolerance either at the plea hearing or the revocation hearing, we hold appellant waived any complaint on appeal about the trial court's application of zero tolerance. *See* TEX. R. APP. P. 33.1(a)(1)(A); *Hull*, 67 S.W.3d at 217–18. Issue one is overruled.

5

**B. Zero Tolerance**

In issue two, appellant contends zero tolerance is not a basic and/or reasonable condition of "community service" in conformity with article 42.12, section 11 of the Texas Code of Criminal Procedure because the term "zero tolerance" is not a reasonable condition of "community service." Article 42.12, section 11 entitled "Basic Conditions of Community Supervision" does not include "zero tolerance" as a basic condition of community supervision. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 11 (West Supp. 2011). However, defense counsel did not object either at the plea hearing or at the revocation hearing that zero tolerance was not a reasonable or basic condition of community supervision. Therefore, we hold appellant has waived this complaint for appellate review. *See* TEX. R. APP. P. 33.1(a)(1)(A); *Grant*, 345 S.W.3d at 512. Issue two is overruled.

In issue three, appellant contends an implied condition of zero tolerance is not a basic and/or reasonable condition of community supervision in conformity with article 42.12, section 11 of the Texas Code of Criminal Procedure. In issue four, he contends the term "zero tolerance" is not defined and/or is too vague for a criminal defendant to have reasonable notice of his conditions of "community service." However, defense counsel did not object either at the plea hearing or at the revocation hearing that (1) an implied condition of zero tolerance is not a basic and/or reasonable condition of community supervision or (2) the term "zero tolerance" is not defined and/or is too vague for a criminal defendant to have reasonable notice of his conditions of community service. Therefore, we hold appellant has waived these complaints for appellate review. *See*

6

TEX. R. APP. P. 33.1(a)(1)(A); *Grant*, 345 S.W.3d at 512. Issues three and four are overruled.

**C. Right to Testify**

In issue five, appellant contends: (1) he was deprived of his liberty interest without due process of law when he was not admonished about his right to testify on his own behalf; (2) he was denied his right to testify because he could not speak; (3) he was denied his right to effective assistance of counsel; and (4) he was denied his rights under the Americans With Disabilities Act. We address each argument separately.

**1. Trial Court's Failure to Admonish Appellant About His Right to Testify**

"A guilty plea constitutes a waiver of three constitutional rights: the right to a jury trial, the right to confront one's accusers, and the right not to incriminate oneself." *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006) (citing *Boykin v. Alabama*, 395 U.S. 238, 243 (1969)). Consequently, a person must enter a guilty plea knowingly, intelligently, and voluntarily so that the plea is consistent with due process of law. *Id.* (citing *Boykin*, 395 U.S. at 242). "To be 'voluntary,' a guilty plea must be the expression of the defendant's own free will and must not be induced by threats, misrepresentations, or improper promises." *Id.* (citing *Brady v. United States*, 397 U.S. 742, 755 (1970)). In *Aguirre-Mata v. State*, the court of criminal appeals said that the *Boykin* Court stated "generally that state courts should make sure that a guilty-pleading defendant has a full understanding of what the plea connotes and of its consequences." 125 S.W.3d 473, 475 (Tex. Crim. App. 2003) (internal quotes omitted).

7

Several decades ago, the United States Supreme Court stated "that an accused has a right . . . to testify on his own behalf. . . ." *Faretta v. California*, 422 U.S. 806, 819 n.15 (1975). In the instant case, defense counsel made no objection that the trial court failed to admonish appellant about his right to testify at the plea hearing. Therefore, we hold appellant has waived this complaint for appellate review. *See* TEX. R. APP. P. 33.1(a)(1)(A); *Grant*, 345 S.W.3d at 512. Even assuming appellant had preserved this complaint for our review, nothing in article 26.13 of the Texas Code of Criminal Procedure (which includes a list of admonishments applicable to defendants who plead guilty or nolo contendere) requires a trial court to admonish a defendant about his or her right to testify at a plea hearing. *See* TEX. CODE CRIM. PROC. ANN. art. 26.13 (West Supp. 2011). In addition, the record of the plea hearing does not show that appellant wanted to testify. Based upon this record, we cannot say that appellant was denied his right to testify at the plea hearing. The record shows appellant knowingly, intelligently, and voluntarily entered his pleas.

**2. Whether Appellant Was Denied the Right to Testify Because of His Inability to Speak**

During the plea hearing, defense counsel told the trial court appellant "has throat cancer, so he cannot speak." The record of the plea hearing reflects that defense counsel responded to the court's questions on appellant's behalf. The record does not reflect that appellant was denied the right to testify at the plea hearing because he could not speak.

With regard to the revocation hearing, appellant argues he "was denied his right to testify on his own behalf and/or present his own version of events in his own words at the

8

hearing on his Motion to Revoke Probation because he was physically limited to have one or two word sentence answers." During the revocation hearing, but prior to the time appellant pleaded "True" to the allegations in the motion to revoke, defense counsel told the trial court: "Just for the record, Mr. Mora [appellant] still cannot speak, so I'm going to ask him yes or no questions, I guess, so he can nod his head." Defense counsel also stated appellant "can speak in a whisper, maybe, but it's very difficult to understand."

At no time during the revocation hearing did appellant or his defense counsel object that because appellant had difficulty speaking he was being denied his right to testify on his own behalf and/or present his own version of events in his own words. Thus, we hold appellant has waived this complaint for appellate review. *See* TEX. R. APP. P. 33.1(a)(1)(A); *Grant*, 345 S.W.3d at 512. Nevertheless, after appellant pleaded "True" to the allegations in the motion to revoke, defense counsel told the trial court appellant "would like to explain as best he can why he missed the two probation visits. . . " Defense counsel then asked appellant a series of questions, and appellant answered them, using one-sentence answers. However, on cross-examination, some of appellant's answers to the prosecutor's questions were longer than one- or two-word sentence answers. For instance, when the prosecutor asked appellant whether he had an excuse for missing a counseling session, he said, "I don't think so. That time I just felt bad. I just got sick, so I didn't go." When the prosecutor asked appellant about another absence on December 28, 2010, he stated, "That was after my surgery and those two weeks were off." And, when the prosecutor asked appellant whether he had an excuse for missing a counseling session on January 18, 2011, he said, "I told them that I had an

9

excuse. Ms. Sanders called she told me I had three weeks to recover." Thus, the record does not reflect that appellant was denied his right to testify on his own behalf and/or present his own version of events in his own words because he was physically limited to making one- or two-word sentence answers.

### 3. Ineffective Assistance of Counsel

Appellant argues defense counsel was ineffective because: (1) he did not arrange for an interpreter, and he acted as an interpreter without qualifications to act as an interpreter; (2) he did not request an aid to help appellant communicate; (3) he did not request a continuance until the time appellant was able to speak; (4) he did not notify appellant that he had the right to testify; (5) he allowed appellant to plead "True" without appellant first being admonished he had the right to testify; (6) appellant could not adequately communicate with his defense counsel during the revocation hearing or during the new-trial hearing; and (7) defense counsel allowed him to plead "True" at the revocation hearing without the ability to testify on his own behalf.

"The Sixth Amendment to the United States Constitution, and section ten of article 1 of the Texas Constitution, guarantee individuals the right to assistance of counsel in a criminal prosecution." *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011) (citing U.S. CONST. amend. VI; TEX. CONST. art. 1, § 10). "The right to counsel requires more than the presence of a lawyer; it necessarily requires the right to effective assistance." *Id.* (citing *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970); *Powell v. Alabama*, 287 U.S. 45, 57 (1932)). "However, the right does not provide a right to

10

errorless counsel,[2] but rather to objectively reasonable representation." *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 686 (1984)).

"To prevail on a claim of ineffective assistance of counsel, an appellant must meet the two-pronged test established by the U.S. Supreme Court in *Strickland. . . ."* *Id.* "Appellant must show that (1) counsel's representation fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced the defense." *Id.* (citing *Strickland*, 466 U.S. at 689). "Unless appellant can prove both prongs, an appellate court must not find counsel's representation to be ineffective." *Id.* (citing *Strickland*, 466 U.S. at 687). "In order to satisfy the first prong, appellant must prove, by a preponderance of the evidence, that trial counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms." *Id.* "To prove prejudice, appellant must show that there is a reasonable probability, or a probability sufficient to undermine confidence in the outcome, that the result of the proceeding would have been different." *Id.* (citing *Strickland*, 466 U.S. at 687).

"An appellate court must make a 'strong presumption that counsel's performance fell within the wide range of reasonably professional assistance.'" *Id.* (quoting *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006) (citing *Strickland*, 466 U.S. at 689)). "In order for an appellate court to find that counsel was ineffective, counsel's deficiency must be affirmatively demonstrated in the trial record; the court must not engage in retrospective speculation." *Id.* (citing *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999)). "'It is not sufficient that appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence.'"

---

2 *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006).

*Id.* at 142–43 (quoting *Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007)). "When such direct evidence is not available, we will assume that counsel had a strategy if any reasonably sound strategic motivation can be imagined." *Id.* at 143 (citing *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)). "In making an assessment of effective assistance of counsel, an appellate court must review the totality of the representation and the circumstances of each case without the benefit of hindsight." *Id.* (citing *Robertson*, 187 S.W.3d at 483).

The court of criminal appeals "has repeatedly stated that claims of ineffective assistance of counsel are generally not successful on direct appeal and are more appropriately urged in a hearing on an application for a writ of habeas corpus." *Id.* (citing *Bone v. State*, 77 S.W.3d 828, 833 n.13 (Tex. Crim. App. 2002); *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002)); *see Ex parte Nailor*, 149 S.W.3d 125, 131 (Tex. Crim. App. 2004). "On direct appeal, the record is usually inadequately developed and 'cannot adequately reflect the failings of trial counsel' for an appellate court 'to fairly evaluate the merits of such a serious allegation.'" *Id.* (quoting *Bone*, 77 S.W.3d at 833).

Even assuming defense counsel was deficient as appellant argues, appellant has failed to show how the result of either the plea hearing or the revocation hearing would have been different but for counsel's deficient performance. Thus, appellant has failed to establish the second prong of the two-part *Strickland* test.

### 4. Americans With Disabilities Act

Appellant argues he was denied his rights under the Americans With Disabilities Act (ADA) because the trial court did not provide him with either an interpreter, aid, or

service, despite the fact he had a speech impairment. Defense counsel never objected that the trial court was violating appellant's rights under the ADA. Therefore, we hold appellant has waived this argument for appellate review. *See* TEX. R. APP. P. 33.1(a)(1)(A); *Grant*, 345 S.W.3d at 512. Issue five is overruled.

## II. CONCLUSION

The judgment of the trial court is affirmed.


ROSE VELA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
19th day of July, 2012.