**Opinion filed August 20, 2020**



In The

# Eleventh Court of Appeals

_____

## No. 11-18-00227-CR

_____

## TRACY KATHLEEN CHAMBERS, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the County Court at Law**
**Taylor County, Texas**
**Trial Court Cause No. 1-1169-17**

## M E M O R A N D U M   O P I N I O N

The jury convicted Appellant, Tracy Kathleen Chambers, of disorderly conduct for displaying a firearm in a public place in a manner calculated to alarm. The trial court assessed punishment at 180 days in jail, suspended the imposition of the sentence, and placed Appellant on community supervision for twelve months. We affirm.

Appellant raises two issues on appeal. First, Appellant argues that the evidence was insufficient to support the conviction. Specifically, Appellant argues that the State failed to prove that Appellant acted knowingly or intentionally in a manner calculated to cause alarm and that the State failed to prove that the offense occurred in a public place. Second, Appellant argues that the trial court erred when it denied her motion for new trial.

We review the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational trier of fact could have found the essential elements of an offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

The standard in *Jackson* requires the reviewing court to "defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given" to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (emphasis omitted); *accord Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008) ("Appellate courts should afford almost complete deference to a jury's decision when that decision is based upon an evaluation of credibility.").

Appellant lived on the first floor of an apartment building. She experienced problems with her upstairs neighbors "almost immediately" after Appellant moved in. Her chief complaints involved the odor of marihuana. Appellant's next-door neighbor, Darla Swaim, shared similar complaints, and the two decided to move out at the same time and share expenses for the move. Swaim and Appellant could not complete the move when they had intended to because the area between their apartments and the parking lot was "filled up with weed smoke," which made Swaim

ill. Kiyauna Robinson was on the upstairs balcony; the offensive smoke came from her cigar.

Appellant attempted to resolve the issue and asked Robinson to smoke elsewhere. When Robinson did not comply, Appellant called the police. Before the police arrived, Robinson left the upstairs apartment with her younger brother and nephew and began to put them in her vehicle that was parked in the parking lot of the apartment complex. Appellant was in the parking lot at the time, sending text messages and using her cell phone. Robinson believed that Appellant was acting suspiciously and that Appellant was photographing her and the license plate on her vehicle. Robinson asked Appellant to step away from her vehicle and asked, "[W]hy [are you] taking a picture of me and my license plate?" Rather than respond, Appellant left the parking lot and returned to her apartment.

At this point, witness accounts of the incident diverge. However, it is clear that Robinson followed Appellant to Appellant's door to further question Appellant as to whether she had been photographed. In Robinson's version of the events, she knocked on Appellant's door, and after about fifteen seconds, Appellant came to the door. When Appellant came to the door, she was yelling for Swaim to get her firearm and for Robinson to "[g]et out of [her] face." In Appellant's version, Robinson followed in hot pursuit from the parking lot, prevented Appellant from closing the door to her apartment, and pounded aggressively on the doorjamb while yelling and tormenting Appellant. Appellant testified that she told Robinson that she "felt threatened." Appellant then left her apartment, walked past Robinson, and went to her vehicle to get a Ruger .380 semiautomatic handgun.

After she got her handgun, Appellant made a second 9-1-1 call to report the disturbance. During the call, the dispatcher questioned Appellant about the escalation of events from the original drug complaint. Appellant told the dispatcher that she "got a picture of [Robinson]" and that she felt threatened. In the background

of the call, Robinson can be heard yelling that Appellant had pulled a gun on her. The dispatcher told Appellant that officers were on the way and that she should return to her apartment and wait for the officers.

Officer Jody Peavy of the Abilene Police Department responded to Appellant's original 9-1-1 call about the marihuana smoke. While Officer Peavy was on his way to the scene, the call changed from a "drug use in progress" to a "disturbance in progress involving a gun." Officer Peavy arrived on the scene and questioned Appellant, Robinson, Swaim, and Robinson's sister.

After he arrived at the scene, Officer Peavy checked Robinson for the odor of marihuana and found none. He testified that he smelled the odor of a cigar but could detect no marihuana odor on her clothing or hands.

After Officer Peavy talked with all available witnesses, he arrested Appellant for disorderly conduct with a firearm. He testified that, based on the totality of the circumstances, the incident could have been easily avoided if Appellant had not left her apartment to get a firearm. In his opinion, Appellant left the security of her apartment, proceeded to put herself in close proximity to the alleged threat, and prominently displayed her firearm. Witness accounts vary as to Appellant's hand and arm positions during the encounter, but Officer Peavy testified that, because Appellant did not point the firearm at any particular person, he concluded that she was displaying it in a manner to cause alarm.

A person commits the offense of disorderly conduct if she "intentionally or knowingly . . . displays a firearm or other deadly weapon in a public place in a manner calculated to alarm." TEX. PENAL CODE ANN. § 42.01(a)(8) (West 2016). After the briefs in this case were filed, the Court of Criminal Appeals decided *State v. Ross*, which also involved Section 42.01(a)(8). The court analyzed the meaning of the phrase "a manner calculated to alarm" and found that the phrase means "a

manner that is objectively likely to frighten an ordinary, reasonable person." *State v. Ross*, 573 S.W.3d 817, 824 (Tex. Crim. App. 2019).

In *Ross*, the court noted that Texas is an open-carry state and that there could be situations in which a "person might intentionally display a firearm in a public place and, without any guiltiness of mind, exhibit it in a manner that is objectively likely to frighten an ordinary person." *Id.* But because Section 42.01(a)(8) includes a culpable mental state, the *Ross* court concluded that the State must prove that (1) the actor's display was objectively alarming and (2) that the actor knew his display was objectively likely to alarm. *Id.* at 826. The jury has the opportunity to "impose its common sense on both of these elements," and we defer to the jury's determination under the *Jackson* standard. *Id.*; *see Jackson*, 443 U.S. at 319.

In her first issue on appeal, Appellant challenges the sufficiency of the evidence supporting her conviction. Appellant's challenge is two pronged; she argues (1) that the State did not prove the required mental state and (2) that the State failed to show the offense occurred in a public place.

Appellant first argues that she did not intentionally display her firearm in a manner calculated to alarm. She argues that she was in genuine fear for her safety and that none of the State's witnesses testified that they were alarmed. Even though witness accounts vary, both sides provided evidence that Appellant moved from the parking lot to her apartment and then to her vehicle to get her firearm. Both sides also presented testimony that young children were inside one of the nearby vehicles. At the time that Appellant displayed her firearm, she was fifteen to twenty feet away from Robinson. Appellant testified that she displayed the firearm to "thwart" Robinson's aggression. Robinson and her sister described Appellant as "waving" the firearm in an uncontrolled manner; others said that Appellant pointed the firearm at the ground. With respect to the conflicting evidence, we presume that the jury resolved the conflicts in favor of the verdict, and we defer to the jury's determination

on the issue. *Jackson*, 433 U.S. at 326; *Brooks*, 232 S.W.3d at 899. Viewing the record in the light most favorable to the verdict, we find that a rational juror could conclude that (1) Appellant's display of the firearm was objectively alarming and (2) that she knew that her display of the firearm was objectively likely to cause alarm.

In her first issue on appeal, Appellant also argues that the State failed to prove that she displayed the firearm in a public place. We find this argument to be without merit. The Penal Code defines "public place" as "any place to which the public or a substantial group of the public has access [including] . . . the common areas of . . . apartment houses." PENAL § 1.07(a)(40). Appellant also testified that, during the start of the confrontation, she refused to move from in front of Robinson's vehicle because she was on "a public sidewalk." Therefore, by Appellant's own admission, she displayed the firearm in a public place. We overrule Appellant's first issue on appeal.

In her second issue, Appellant argues that the trial court erred when it denied Appellant's motion for new trial because (1) acts of intimidation violated her due process rights and (2) a new trial is mandated under Rule 21.3(e) of the Texas Rules of Appellate Procedure, which requires a new trial "when a material defense witness has been kept from court by force, threats, or fraud."

We review the denial of a motion for new trial for an abuse of discretion. *Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006). A trial court abuses its discretion "only when no reasonable view of the record" supports the ruling. *Id.* Generally, a trial court does not abuse its discretion when it denies a motion for new trial unless the defendant has demonstrated that her trial was seriously flawed and that the flaws adversely affected her substantial rights to a fair trial. *State v. Herndon*, 215 S.W.3d 901, 909 (Tex. Crim. App. 2007). In a motion for new trial

hearing, the trial court determines the credibility of the witnesses. *Cloyer v. State*, 428 S.W.3d 117, 122 (Tex. Crim. App. 2014).

Appellant argues that she experienced intimidation during and after witness testimony, which violated her due process rights. Specifically, Appellant alleges that she felt uncomfortable and intimidated during her testimony because people in the courtroom were "mouthing words" and making faces at her during her testimony. At the hearing on the motion for new trial, Appellant testified that the same people followed her outside the courthouse and continued to glare and mouth "threatening [and] intimidating verbiage" at her. However, Appellant alleged few new facts and failed to elaborate on how her testimony would have changed without the alleged intimidation. At the hearing, Appellant testified that, due to the intimidation, she was unable to remember to say that she was medically unable to move her arm in the manner described by the State's witnesses. However, Appellant provided only her testimony and no other evidence of her medical condition.

Appellant also called Swaim to testify at the hearing on the motion for new trial. But Swaim only testified that her original courtroom testimony was "distracted" and that she did not "feel relaxed" due to the distractions. Without further evidence, the trial court was free to make a credibility determination of the witnesses' testimony at the hearing. *Cloyer*, 428 S.W.3d at 122. We find that the denial of the motion for new trial is supported by the record, and we hold that the trial court did not abuse its discretion.

Appellant argues for the first time on appeal that a new trial is mandated under Rule 21.3(e), which requires a new trial "when a material defense witness has been kept from court by force, threats, or fraud." TEX. R. APP. P. 21.3(e). Appellant does not show that any material witness was kept from court; instead, she argues that the intimidation and courtroom distractions were "tantamount" to the same. In her motion for new trial, Appellant complained that the verdict was contrary to the law

and evidence and that her due process rights had been violated.  Appellant failed to assert a Rule 21.3(e) complaint or to argue that material witnesses were kept from the court.  Accordingly, Appellant did not preserve this issue, and it is outside the scope of our review.  *See Hull v. State*, 67 S.W.3d 215, 217 (Tex. Crim. App. 2002); *see also* TEX. R. APP. P. 33.1(a) (requiring that, "[a]s a prerequisite to presenting a complaint for appellate review," a timely request, objection, or motion must be made and ruled upon by the trial court).  We overrule Appellant's second issue.

We affirm the judgment of the trial court.


JIM R. WRIGHT
SENIOR CHIEF JUSTICE


August 20, 2020

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[1]

Willson, J., not participating.

---

[1]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.