# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00052-CR

**William Leon Alexander, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF COMAL COUNTY, 22ND JUDICIAL DISTRICT
## NO. CR2003-461, HONORABLE JACK ROBINSON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

William Leon Alexander was convicted of three counts of indecency with a child. *See* Tex. Pen. Code Ann. § 21.11 (West 2003). In three issues on appeal, Alexander contests the legal and factual sufficiency of the evidence supporting his convictions and asserts that his trial counsel's failure to file a motion to recuse the district judge constituted ineffective assistance of counsel. We will affirm the judgment of the district court.

### BACKGROUND

Based on alleged incidents involving four different female minors, the State charged Alexander with eight counts of indecency with a child. He was convicted of three counts, I, II, and VIII, from which he appeals.

Counts I and II of the indictment alleged that, on or about May 18, 2002, Alexander touched, respectively, the breast and genitals of A.T. with the intent to arouse and gratify his sexual desire. The jury heard evidence that, on May 18, 2002, 12-year-old A.T. accompanied her mother to work. A.T. was planning on working at her mother's office over the summer to answer "the phones and stuff." A.T. testified that she and Alexander, who worked with her mother, were alone in the office most of the day and, at one point in the afternoon, Alexander called A.T. upstairs to his office and asked her to sit on his lap. A.T. testified that she did so. Then, according to A.T., Alexander began rubbing her stomach underneath her shirt and "moved his hand up and touched the lower part" of her chest and one of her breasts. A.T. testified that Alexander quit touching her when the phone rang and she "jumped up fast" to answer it. The caller was A.T.'s mother, who was posing as a customer and testing A.T. to see how well she answered the phones. A.T. testified that after she finished speaking with her mother, she went downstairs. Alexander followed her. A.T. testified that she sat on the couch, and Alexander sat down next to her and began rubbing the inside of her thighs. A.T. testified that Alexander then touched her "vaginal area" where there was "a hole in her stockings." A.T. then pushed his arms away, got up from the couch, and went to the kitchen area. Again, Alexander followed her. A.T. testified that Alexander "came up behind [her] and he pushed his front body up against [her] back." A.T. described Alexander's actions as "like two dogs." To get away from Alexander, A.T. testified that she pretended to see her teacher outside the window. After that, he let her go. Then, according to A.T., Alexander grabbed her and "lifted her up" toward the ceiling. At around this time, A.T.'s mother returned to the office, and A.T. testified that her mother saw her with Alexander in the kitchen and told them to "stop goofing around." When she was alone with her mother, A.T. told her what Alexander had done to her.

2

Count VIII of the indictment alleged that, on or about March 28, 2002 through April 8, 2002, Alexander touched the breast of M.C. with the intent to arouse and gratify his sexual desire. The jury heard evidence that between March 28 and April 8 of 2002, 13-year-old M.C. was staying with her father in Canyon Lake during Spring Break. M.C. testified that one night she was at a bar with her father, some of her friends, and Alexander, who was a friend of her father. M.C. testified that around closing time, her father gave her permission to ride home in Alexander's convertible. As they were driving, Alexander pulled over and asked M.C. if she wanted to drive. M.C. testified that she did and that Alexander had her sit on his lap steering the car while Alexander operated the accelerator and the brake. M.C. testified that shortly thereafter Alexander began touching M.C.'s "belly button ring" underneath her blouse and then her breasts underneath her bra. M.C. testified that Alexander was calling her "Joann" while they were driving. Joann was the name of Alexander's girlfriend. M.C. testified that she did not tell her father about this incident until after her father, who also worked with A.T.'s mother, told M.C. about A.T.'s accusations against Alexander.

The jury found Alexander guilty of counts I, II, and VIII of the indictment. Punishment was assessed as five years' confinement for count I, eight years' confinement for count II, and five years' confinement for count VIII, with the sentences to be served concurrently. This appeal followed.

## DISCUSSION

**Evidentiary sufficiency**

In his first two issues, Alexander challenges the sufficiency of the evidence supporting his convictions. His second issue attacks the legal sufficiency of the evidence that, with

3

respect to each count, he acted with the intent to arouse and gratify his sexual desire. Alexander's first issue contests the factual sufficiency of the evidence that he actually committed the acts of touching made the basis of counts I, II, and VIII of the indictment.

### *Standard of review*

When there is a challenge to the legal sufficiency of the evidence to sustain a criminal conviction, we consider whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Vodochodsky v. State*, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005). We review all the evidence in the light most favorable to the verdict, assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *See Griffin v. State*, 614 S.W.2d 155, 159 (Tex. Crim. App. 1981). It is not necessary that every fact point directly and independently to the defendant's guilt; it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances. *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). We consider even erroneously admitted evidence. *Id*. The jury is the exclusive judge of the credibility of witnesses and of the weight to be given their testimony. *Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996). Reconciliation of any conflicts in the evidence is within the exclusive province of the jury. *Id*.

In a factual sufficiency review, we view the evidence in a neutral light and will set aside the verdict only if the supporting evidence is so weak that the verdict is clearly wrong or the contrary evidence is so strong that the jury could not have found all the elements of the crime beyond a reasonable doubt. *Prible v. State*, 175 S.W.3d 724, 731 (Tex. Crim. App. 2005). A verdict is

4

clearly wrong and unjust if the "jury's finding is 'manifestly unjust,' 'shocks the conscience,' or 'clearly demonstrates bias.'" *Id*. (quoting *Santellan v. State*, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997)). All the evidence is considered equally, including the testimony of defense witnesses and the existence of alternative hypotheses. *Orona v. State*, 836 S.W.2d 319, 321 (Tex. App.—Austin 1992, no pet.). Although due deference must be accorded the fact-finder's determinations, particularly those concerning the weight and credibility of the evidence, the reviewing court may disagree with the result in order to prevent a manifest injustice. *Johnson v. State*, 23 S.W.3d at 9. The evidence will be deemed factually insufficient to sustain the conviction if the proof of guilt is too weak or the contrary evidence is too strong to support a finding of guilt beyond a reasonable doubt. *Zuniga v. State*, 144 S.W.3d 477, 484-85 (Tex. Crim. App. 2004); *see Johnson*, 23 S.W.3d at 11.

### *Legal sufficiency*

A person commits the offense of indecency with a child if the person engages in sexual contact with a child or causes a child to engage in sexual contact, if the child is younger than 17 years and is not the person's spouse. Tex. Pen. Code Ann. § 21.11(a)(1) (West 2003). "Sexual contact" means any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child, if committed with the intent to arouse or gratify the sexual desire of any person. *Id*. § 21.11(c)(1). Alexander claims that the State failed to prove beyond a reasonable doubt that Alexander acted with the intent to arouse or gratify his sexual desire.

Intent may be inferred from the acts, words, and conduct of the accused and from the circumstances surrounding the acts in which the accused engaged. *Hernandez v. State*, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991); *DeLeon v. State*, 77 S.W.3d 300, 312 (Tex. App.—Austin 2001,

pet. ref'd). In counts I and II of the indictment, Alexander's intent to arouse or gratify his sexual desire may be inferred from A.T.'s testimony that when Alexander pushed his body against her back in the kitchen, it felt "like two dogs," and from A.T.'s testimony that Alexander followed her around the office, touching her inappropriately not once, but three different times. A.T. testified that Alexander did not merely touch her, but that he "rubbed" her stomach and her thighs. A rational jury could infer that "rubbing" someone's body in the manner that Alexander rubbed A.T. was done with the intent to arouse or gratify one's sexual desire.

In count VIII of the indictment, Alexander's intent to arouse or gratify his sexual desire may be inferred from M.C.'s testimony that Alexander called her "Joann" while he was touching her, which is the name of Alexander's girlfriend. M.C. testified that at one point while he was touching her breasts, Alexander said, "Oh, I miss you, Joann." Alexander's intent may also be inferred from the manner in which he touched M.C. Although M.C. testified that she did not believe Alexander intended to arouse or gratify his sexual desire, this testimony is nothing more than the victim's speculative opinion of Alexander's state of mind. A rational jury could disregard M.C.'s claimed perception of Alexander's intent and focus instead on the other probative evidence concerning Alexander's acts, words, and conduct.

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational jury could have found beyond a reasonable doubt that Alexander acted with intent to arouse or gratify his sexual desire when engaging in the conduct made the basis of counts I, II, and VIII.

6

*Factual sufficiency*

We have previously detailed the evidence supporting the verdict. The evidence contrary to the verdict consists of A.T.'s admission during cross-examination that she had testified during a pretrial hearing that Alexander touched her stomach but "not much anywhere else." Also on cross-examination, when asked if she ever claimed that Alexander "fondled" her breast, A.T. responded, "No." A.T. also admitted on cross-examination that she "couldn't tell exactly where" Alexander touched her on her vaginal area. Furthermore, A.T.'s mother testified on cross-examination that the hole in A.T.'s stockings, through which Alexander allegedly touched her genitals, was not directly over A.T.'s vaginal area.

On cross-examination, M.C. testified that she was "forced" to make a statement against Alexander because the police told her that her mother would go to jail if she refused to cooperate. M.C. also testified on cross-examination that she did not believe Alexander touched her on purpose and that he did not intend to arouse or gratify his sexual desire by touching her. M.C. believed that Alexander was simply intoxicated and that he was mistaking her for his girlfriend, Joann. However, on redirect examination, M.C. testified that she did not believe Alexander's hands just "accidentally" slipped under her bra, but that his touching was "an intentional act."

Alexander testified that A.T. wanted to wrestle with him while they were at the office, but that he told her no because it was "not appropriate." Alexander denied asking A.T. to sit on his lap and testified that she never sat on his lap. Alexander also denied rubbing A.T.'s stomach. He testified that he was not in the kitchen area alone with A.T. and that he did not rub his body against hers. Alexander also denied touching A.T.'s legs and putting his hand in a hole in her stockings.

7

Alexander testified that he did let M.C. drive his convertible that night and that she sat on his lap. He testified that he joked with M.C. about her belly button ring, and he commented to her that Joann also had a belly button ring. Alexander denied touching M.C.'s breasts.

Considering all of the evidence in a neutral light, and giving due deference to the jury's resolution of conflicts in the evidence, we do not believe the proof of guilt is too weak or the contrary evidence is too strong to support a finding of guilt beyond a reasonable doubt. *See Zuniga*, 144 S.W.3d at 484-85. We overrule Alexander's first and second issues.

**Ineffective assistance of counsel**

In his third issue, Alexander asserts that trial counsel's failure to file a motion to recuse the district judge constituted ineffective assistance of counsel. The basis for the motion to recuse, according to Alexander, was the likelihood that the judge would impose a "harsh sentence." In a previous case, the same judge had sentenced Alexander to a maximum term of 20 years' confinement for an aggravated assault that was, in Alexander's opinion, "relatively minor." Alexander claims that counsel's failure to file a motion to recuse deprived him of a fair trial.

To prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel made such serious errors that he was not functioning effectively as counsel and that these errors prejudiced the defendant's defense to such a degree that he was deprived of a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Hernandez v. State*, 988 S.W.2d 770, 771-72 (Tex. Crim. App. 1999). We must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). To overcome this presumption, any allegation of ineffectiveness must be

8

firmly founded in the record and the record must affirmatively demonstrate the alleged ineffectiveness. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001). In most cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions. *Id*.

Alexander's claim that counsel should have filed a motion to recuse the district judge finds no support in the record. While a judge's arbitrary refusal to consider the entire range of punishment may be a proper ground for a motion to recuse, *see McClenan v. State,* 661 S.W.2d 108, 110 (Tex. Crim. App. 1983); *Roman v. State*, 145 S.W.3d 316, 319 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd), there is no evidence in this case that the judge's prior sentencing decision was arbitrary or that the judge refused to consider the entire range of punishment. Simply because the judge imposed the maximum sentence in a prior aggravated assault case does not mean that he is biased against the accused or that his previous decision was arbitrary. *See Kemp v. State*, 846 S.W.2d 289, 306 (Tex. Crim. App. 1992) ("the presumption of judicial impartiality cannot be overcome by the mere assertion of bias based solely on a trial judge's previous judicial relationship with a defendant."); *see also United States v. Clark,* 605 F.2d 939, 941 (5th Cir. 1979) (it would be "untenable" to hold that judge who had once tried defendant was thereafter barred from trying same defendant on other, unrelated, charges).

Furthermore, absent an explanation of trial counsel's reasons for failing to file a motion to recuse the trial judge, we cannot presume that counsel's performance was deficient. *Andrews v. State*, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005) (citing *Freeman v. State*, 125 S.W.3d 505, 506-07 (Tex. Crim. App. 2003)). Filing a motion to recuse, especially without adequate cause,

could have adversely impacted Alexander's defense. *See Hull v. State,* 67 S.W.3d 215, 221 (Tex. Crim. App. 2002) (Johnson, J., dissenting). Therefore, not filing a motion to recuse could have been a strategic move on the part of trial counsel.

We also note that, even if there had been a legitimate basis for filing a motion to recuse, an attorney's mere failure to file a pretrial motion, including a motion to recuse, shall not be categorically deemed ineffective assistance of counsel. *See Madden v. State*, 911 S.W.2 d 236, 241 (Tex. App.—Waco 1995, pet. ref'd); *Martinez v. State*, 824 S.W.2d 688, 690 (Tex. App.—El Paso 1992, pet. ref'd) (citing *Passmore v. State*, 617 S.W.2d 682, 685 (Tex. Crim. App. 1981)). An examination of the entire record reveals that counsel was an effective advocate for his client throughout the proceedings, and succeeded in acquitting Alexander of five of the eight charges that were pending against him. We overrule Alexander's third issue.

## CONCLUSION

Having overruled Alexander's issues on appeal, we affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices Patterson and Pemberton

Affirmed

Filed: July 21, 2006

Do Not Publish

10