NUMBER 13-06-532-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


JACK HOLLAND, Appellant,


v.


THE STATE OF TEXAS, Appellee.

 


On appeal from the 36th District Court of Aransas County, Texas.

 


MEMORANDUM OPINION


Before Chief Justice Valdez and Justices Garza and Benavides


Memorandum Opinion by Justice Garza


 

 After a jury trial, appellant, Jack Holland, was convicted of felony criminal mischief. 
See Tex. Penal Code Ann. § 28.03(a)(1) (Vernon Supp. 2007). The trial court assessed
punishment at two years' confinement, no fine, and $14,125.00 in restitution. See id. §
28.03(b)(4)(A), (e); Id. § 28.06(b) (Vernon 2003). By three issues, appellant contends that: 
(1) the evidence was legally and factually insufficient to support his conviction; (2) the trial
court erred in failing to review recorded telephone conversations between appellant and
Michelle Breaux for relevancy and objectionable conduct, as requested in appellant's
motion in limine; and (3) appellant's sentence is disproportionate to the severity of his
offenses in violation of the Eighth and Fourteenth Amendments to the United States
Constitution. See U.S. Const. amends. VIII, XIV. (1) We affirm.

I. Factual and Procedural Background

 On July 25, 2006, appellant was indicted for felony criminal mischief, a state jail
felony. See Tex. Penal Code Ann. § 28.03(a)(1). The indictment provided, in relevant
part:

JACK HOLLAND

 on or about the 15th day of May, A.D. 2006 and anterior to the presentment
of this indictment, in the County and State aforesaid, did then and there
intentionally or knowingly, in a continuing course of criminal conduct, damage
or destroy tangible property, to wit: a Honda automobile owned by Michelle
Breaux,[ (2)] a Ford Pickup and Bayliner boat owned by Jimmy Jones,[ (3)] and a
Dodge Pickup and Mazda automobile, owned by Larry Parker,[ (4)] by cutting
tires and painting said property items, without the effective consent of said
property owners, and did thereby cause pecuniary loss of $1,500 more [sic]
but less than $20,000 to the said owners . . . . 


 The jury trial commenced on September 5, 2006. On September 6, 2006, prior to
the submission of State's Exhibit 16, appellant tendered a motion in limine requesting the
trial court "to order the State of Texas not to allude to or attempt to publish to the jury
herein a compact disc which purportedly is an enhanced, perhaps edited, recording of a
telephone answering machine in its unredacted state without first having the compact disc
reviewed by the Court and objections to its introduction made by defense counsel and
rulings made thereon." (5) In his motion in limine, appellant further states that the compact
disc came to his attention in the "late morning hours of September 5, 2006," and the
compact disc contains "voice messages left for Michelle Breaux by the Defendant, Jack
Holland during March of 2006." The trial court denied appellant's motion in limine and
admitted the recordings.

 On September 6, 2006, the jury returned a verdict of guilty. Prior to trial, appellant
had elected for the trial court to assess his punishment in the event that the jury found him
guilty. The trial court assessed appellant's punishment at two years' confinement, no fine,
and $14,125 in restitution. (6) See Tex. Penal Code Ann. § 28.03(b)(4)(A), (e); Id. § 28.06(b). 
Also on September 6, 2006, the trial court certified appellant's right to appeal the jury's
verdict and the trial judge's sentence. 

 On September 13, 2006, appellant filed a motion for new trial, alleging that: (1) the
admission of the recordings of messages left on Michelle Breaux's answering machine was
highly prejudicial and that error was preserved by his motion in limine, see Tex. R. Evid.
400, 403; (2) the trial court erred in admitting the recordings without first reviewing its
contents; (3) no evidence supports the trial court's restitution finding; and (4) there was
insufficient evidence presented at trial to establish appellant's guilt. The record reflects
that the trial court did not rule on appellant's motion for new trial; therefore, it was overruled
by operation of law. See Tex. R. App. P. 21.8(a) ("The court must rule on a motion for new
trial within 75 days after imposing or suspending sentence in open court."), 21.8(c) ("A
motion not timely ruled on by written order will be deemed denied when the period
prescribed in (a) expires."). On September 26, 2006, appellant filed his notice of appeal. 
This appeal ensued. 

II. Standard of Review In a legal sufficiency review, we view the evidence in the light most favorable to the
prosecution to determine whether any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307,
318-19 (1979); Watson v. State, 204 S.W.3d 404, 414-17 (Tex. Crim. App. 2006). The trier
of fact is the sole judge of the facts, the credibility of the witnesses, and the weight given
to testimony. See Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Jackson, 443 U.S. at
318-39; Beckham v. State, 29 S.W.3d 148, 151 (Tex. App.-Houston [14th Dist.] 2000, pet.
ref'd). We do not reevaluate the weight and credibility of the evidence, whether
circumstantial or direct, nor do we substitute our own judgment for that of the trier of fact. 
Mosley v. State, 141 S.W.3d 816, 821 (Tex. App.-Texarkana 2004, pet. ref'd); Beckham,
29 S.W.3d at 151. For both legal and factual sufficiency, we consider whether the jury was
rationally justified in finding guilt beyond a reasonable doubt. See Watson, 204 S.W.3d
at 414-17; Beckham, 29 S.W.3d at 151. 

 Each fact need not point directly and independently to the guilt of the appellant, as
long as the cumulative force of all the incriminating circumstances is sufficient to support
the conviction. Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Circumstantial
evidence is as probative as direct evidence in establishing the guilt of an actor;
circumstantial evidence alone can be sufficient to establish guilt. Guevara v. State, 152
S.W.3d 45, 49 (Tex. Crim. App. 2004). On appeal, both circumstantial and direct evidence
cases are examined using the same standard of review. Id. 

 We measure the legal sufficiency of the evidence by the elements of the offense as
defined by the hypothetically correct jury charge. Malik v. State, 953 S.W.2d 234, 240
(Tex. Crim. App. 1997); Adi v. State, 94 S.W.3d 124, 131 (Tex. App.-Corpus Christi 2002,
pet. ref'd). Such a charge would accurately set out the law, would be authorized by the
indictment, and would not unnecessarily increase the State's burden of proof. Malik, 953
S.W.2d at 240. The elements of the charged offense in this case are: (1) appellant
intentionally or knowingly damages or destroys the tangible property of the owner, and (2)
does so without the owner's consent. See Tex. Penal Code Ann. § 28.03(a)(1) (Vernon
Supp. 2007).

 In a factual sufficiency review, we determine whether the evidence supporting the
verdict is so weak that the verdict is clearly wrong and manifestly unjust or whether the
verdict is against the great weight and preponderance of the conflicting evidence. Watson,
204 S.W.3d at 415. We will not reverse a case on a factual sufficiency challenge unless
we can say, with some objective basis in the record, that the great weight and
preponderance of the evidence contradicts the jury's verdict. Id. at 417.



III. Analysis

A. Legal and Factual Sufficiency of the Evidence (7) 

 By his first issue, appellant contends that the evidence adduced at trial was legally 

and factually insufficient to support his conviction for felony criminal mischief. Specifically,
appellant notes that his conviction was premised entirely on circumstantial evidence and
"there were no eye-witnesses, finger prints or other credible forensic evidence linking
Appellant to any of the acts as set forth in the indictment." Appellant also notes that it was
impossible for him to have committed the charged offense because he was in Austin,
Texas at the time the events occurred. 

 As previously mentioned, the State is required to prove the essential elements of
a crime beyond a reasonable doubt. See Malik, 953 S.W.2d at 240. Moreover, the
elements of felony criminal mischief are: (1) appellant intentionally or knowingly damages
or destroys the tangible property of the owner, and (2) does so without the owner's
consent. See Tex. Penal Code Ann. § 28.03(a)(1).

 The State presented the testimony of Aransas County Deputy Sheriff Michael
Hoffman to establish the timing of the incident and his initial investigation. Deputy Sheriff
Hoffman testified that he responded to a complaint at 307 North Sixth Street on May 15,
2006. (8) He further testified that when he arrived at the scene at 2:59 a.m., he observed the
following: "a gold-colored Dodge pickup truck that had an orange-colored spray paint on
the back. And I noticed a small convertible Mazda that had the tired slashed on it as well
as the pickup truck." Deputy Sheriff Hoffman also noted that:

 [He] noticed a boat in the front yard had the tires slashed on the trailer, both
tires. There was spray paint on the hull of the boat, itself. The boat cover
was ripped or had been cut. The tires on his [Jimmy Jones's] pickup truck
as well as Ms. Breaux's car had been sliced. A small Sea-Doo had the tires
sliced on its trailer. There was a lot of spray paint on the vehicles. I noticed
somebody took a can of blue house paint or some sort of paint and poured
it over the hood of the vehicles as well as on a bench that was in the yard. 
And in several areas somebody had spraypainted "a cunt lives here" or "a
man's cunt" I believe is what I took photos of.[ (9)] 

Finally, Deputy Sheriff Hoffman testified that he investigated the scene for about four hours
and that the paint was semi-dry or still fresh when he began his investigation.

 The record also contains the testimony of Michelle Breaux, appellant's ex-wife. 
Breaux testified that she and appellant had been married for three years, but that
appellant left the home in September 2005. Breaux further testified that since appellant
left the home in September 2005, his actions towards her had become threatening. 
Breaux noted that appellant repeatedly asked her for another chance to make the
relationship work, and when she refused, appellant left threatening messages on her
answering machine. In addition, Breaux described an incident that occurred during the
winter of 2005 where appellant left his boat in Breaux's driveway, pushed off the trailer, and
blocked her car. (10) A note was found inside the boat which Breaux recognized as
appellant's handwriting. The note stated the following: "You fuck with me any more with
your trashed out divorce, it will get worst [sic] than this. Don't fuck with me are [sic] you'll
regret it, backstabber." (11) Breaux testified that after September 2005, appellant referred to
her as "backstabber" on a regular basis.

 Breaux testified that on May 15th, Jimmy Jones, her boyfriend, was at her house
and that there was "a Honda car, a Ford pickup truck, and a boat parked outside the fence"
at her residence. Breaux noted that she and Jones went to bed at "nine, ten o'clock
maybe" and that when Jimmy got up at 3:00 a.m. to travel to Austin, he noticed that there
was paint all over their vehicles. Breaux stated that the vehicles were in good
condition--without spray paint--when she and Jones went to bed that evening and that
she recognized the spray-painted handwriting as appellant's. (12)

 Breaux further noted that she had problems with appellant every two to three weeks
and as a result, she filed for divorce in January 2006. The divorce became final in March
2006. Breaux testified regarding an incident six weeks prior at the Fulton Inn where her
vehicle's tires were slashed. She spoke to appellant about this incident, but he denied
involvement.

 Next, Jimmy Jones testified that he overheard several of appellant's alleged
threatening phone calls to Breaux. In those calls, Jones noted that appellant "was calling
her a backstabber. I don't know whether I should say it. Called her a cunt; threatened her,
verbally . . . there was yelling: 'Don't mess with me; I'll mess you up.'" Jones further
testified that he was present when Breaux confronted appellant about the first slashing of
her tires at the Fulton Inn. When he asked appellant "are you crazy?", appellant said, "At
least I got her attention." Jones noted that when he and Breaux went to bed around
midnight, there was no damage done to their vehicles; however, when he woke up at 3:00
a.m. and walked outside, there was extensive damage to the property. Jones corroborated
the damage testimony provided by both Deputy Trooper Hoffman and Breaux. Jones
testified that it cost him $4,000 for a new paint job for his truck and $1,100 to replace the
slashed tires. Jones also stated that it cost him $2,500 for a new paint job for the boat,
$1,100 for new tires on the boat trailer, and $200 to replace the tires on the Sea-Doo
trailer. Finally, Jones testified that he did not give consent to anyone for his property to be
damaged.

 Larry Parker testified that he is Breaux's neighbor and that when he went to bed at
9:30 p.m. on May 15th, neither his vehicles nor the vehicles and property of Breaux and
Jones were damaged. Parker testified that his Dodge pickup truck had foul language
spray-painted on the tailgate, the tires were slashed on his pickup and his Mazda Miata,
his Mazda Miata's ragtop was cut, and there was a wavy line spray-painted around the
exterior of the Miata. Parker noted that it cost him about $1,000 to repair the pickup truck
and about $2,600 to repair the Miata. Parker further testified that he was not aware of
appellant's whereabouts that night and that he thought he was friends with both appellant
and Breaux. 

 After excusing Parker, the State offered into evidence a compact disc containing
various telephone messages left by appellant on Breaux's answering machine. (13) In laying
the predicate for the admission of the recordings on the compact disc, the State proffered
the testimony of Officer James Beck, an investigator with the Aransas County Sheriff's
Office. Officer Beck testified that Breaux brought him original audiotapes of messages left
on Breaux's answering machine. Officer Beck further testified that he transferred the
audiotapes to a compact disc because two of the audiotapes sounded "like chipmunks
because her recorder was on a different speed than my recorder." Officer Beck also noted
that in transferring the audiotapes to the compact disc, he did not, in any way, alter the
voices or words of the participants on the tapes. 

 At this time, appellant objected to the compact disc pursuant to the best evidence
rule, see Tex. R. Evid. 1002, asserting that the compact disc was a recording of the
answering machine messages and that the recording contained messages that should be
redacted because they "don't have anything to do with the event or really with the attitude
of Mr. Holland toward his wife." Specifically, appellant asserted that the recordings
included explicit references to oral sex and climaxing in Breaux's mouth, which appellant
argued has no probative value and would inflame the jury. In response to appellant's
objection, the State noted that "copies are admissible same as the originals. The only
change that was made is a slower speed. They are an exact replica of the tapes and it
goes to show the relationship between the parties." The trial court entered the recordings
into evidence without redaction.

 Officer Beck testifed that he also investigated the incident but that he did not have
the chance to either interview appellant or search his vehicle for forensic evidence linking
appellant to the crime. However, Officer Beck stated that he did try to interview appellant
within three weeks of the incident, but that he was unable to find appellant even after
visiting his residence. Finally, Officer Beck testified that based on his experiences with
appellant in the past and the recorded messages that appellant left for Breaux, he believed
that despite the absence of fingerprints or any other forensic evidence, appellant was the
individual who committed this crime.

 After the State rested its case-in-chief, appellant called Jesse Holland, appellant's
son, to testify. Jesse testified that from May 12th to May 17th, appellant was visiting him
at his apartment in Austin. On the night in question, Jesse testified that he had been
working all day until "8:00-ish." Upon returning home, Jesse noted that he and appellant 
"[j]ust hung around, watched T.V. We unloaded some more of his stuff into my room. 
Made dinner. That's about it." Jesse stated that he and appellant went to bed at 9:30 or
10:00 p.m. and that appellant slept on Jesse's floor beside his bed. Jesse further testified
that his roommate, Andraya Rowley, was present that night and was watching a movie in
the living room of the apartment. Jesse noted that he got up several times that night to use
the restroom. Jesse further stated that when he would get up to use the restroom,
appellant was always asleep on the floor beside his bed, and that he was forced to step
over appellant in order to reach the restroom. Jesse also stated that appellant was present
the next morning at about 7:00 a.m. and that he never saw appellant leave the apartment
that night. Moreover, Jesse testified that appellant did not appear to have bloodshot eyes,
be fatigued, anxious or nervous, or have paint on any part of his body the morning of May
15th. 

 On cross-examination, Jesse revealed that he could not completely remember what
happened on the night in question, but after discussing the events with appellant, he began
to remember what had happened. Jesse also revealed that he had previously lied about
appellant's whereabouts that night to his grandparents and to his brother.

 Appellant then offered the testimony of Rowley, who recalled appellant visiting the
apartment from May 12th to May 17th. Rowley noted that she went to bed at 11:00 p.m.
on the night in question, and that she did not observe anyone leaving the apartment from
the time Jesse returned home from work until the time she went to bed. Rowley testified
that because of the acoustics of the apartment, she would have heard someone exit from
the front door of the apartment. She also stated that on the morning of May 15th, appellant
did not appear to have bloodshot eyes, be fatigued, anxious or nervous, or have paint on
any part of his body. 

 On cross-examination, Rowley admitted that she kept her bedroom door closed
once she retired for the evening. She also revealed that she discussed her testimony with
Jesse prior to the trial. The State then showed Rowley what was marked as State's Exhibit
17, which was Rowley's written recount of appellant's visit to Austin. (14) Rowley admitted
that in recounting appellant's visit to Austin, she did not mention May 14th or May 15th,
which appeared to indicate that her memory of the events was hazy until her discussion
with Jesse. Further, Rowley disclosed that there is an exit from Jesse's bedroom to the
outside which she would not have necessarily heard someone using.

 Finally, appellant himself testified that he had neither sent Breaux any threatening
letters nor made threatening comments to her orally despite admitting that the voice in the
recordings was his own. Appellant denied ever engaging in any acts that would be
construed as oppressive or menacing towards Breaux, including the original slashing of
Breaux's tires. Appellant admitted that he had used some foul language towards Breaux
and that he was mad at her in May 2006. (15) Appellant denied involvement in the events of
May 15th and denied the State's implication that he convinced Jesse to lie as to his
whereabouts on May 15th. Appellant admitted that he had been angry at Jones in the
past, but said that he was never angry at Parker.

 The evidence demonstrates that appellant was angry with Breaux, his ex-wife, for
leaving him and for dating Jones. After hearing all the evidence, the jury concluded that
appellant had committed the actions described in the indictment. See Beckham, 29
S.W.3d at 151 (noting that the trier of fact is the sole judge of the facts, the credibility of
witnesses, and the weight to be given to their testimony). The evidence suggests that
appellant's anger often manifested itself in aggressive conduct, which included menacing
telephone calls and messages, threatening notes, and the constant use of vulgar language
to denigrate Breaux. Despite appellant's contention that he was in Austin on the evening
in question, the testimony of Jesse and Rowley revealed that it was possible for appellant
to leave the apartment undetected; that neither Jesse nor Rowley were aware of
appellant's location at all times during the evening; and that neither Jesse nor Rowley
could recall the event of the night in question in detail until they were approached by
appellant. We conclude that the jury was rationally justified in finding guilt beyond a
reasonable doubt and that the evidence was legally and factually sufficient to support
appellant's conviction. We overrule appellant's first issue. 

B. The Recorded Telephone Conversations

 In his second issue, appellant contends that the trial court erred in failing to review
the recorded telephone conversations between appellant and Breaux for irrelevant and
objectional content according to his motion in limine. Appellant also argues that the
recordings were improperly admitted into evidence because "the prejudicial effect of the
contents of these recordings far outweighed their probative value since the strained
relationship between Ms. Breaux and Appellant was otherwise clearly evident from her
testimony . . . ." See Tex. R. Evid. 403, 404.

 A trial court has wide discretion in its decision to admit or exclude evidence. 
Montgomery v. State, 810 S.W.2d 372, 392 (Tex. Crim. App. 1991); Reyes v. State, 69
S.W.3d 725, 735 (Tex. App.-Corpus Christi 2002, pet ref'd). An abuse of discretion occurs
when the trial court acts arbitrarily or unreasonably, without reference to guiding rules or
principles. Montgomery, 810 S.W.2d at 380. Therefore, the trial court's ruling must be at
least within the zone of reasonable disagreement to prevent reversal. Id. at 391. 

 To preserve a complaint for appellate review, the record must show that a complaint
was made to the trial court by a timely request, objection, or motion that stated the grounds
for the ruling that the complaining party sought from the trial court with sufficient specificity
to make the trial court aware of the complaint, unless the grounds were apparent from the
context. Tex. R. App. P. 33.1(a)(1)(A); Dixon v. State, 2 S.W.3d 263, 265 (Tex. Crim. App.
1998). The objecting party must continue to object each time the objectionable evidence
is offered. Fuentes v. State, 991 S.W.2d 267, 273 (Tex. Crim. App. 1999); Ethington v.
State, 819 S.W.2d 854, 858-59 (Tex. Crim. App. 1991). To be timely, the objection must
be made at the earliest possible opportunity. Turner v. State, 805 S.W.2d 423, 431 (Tex.
Crim. App. 1991) (en banc). A trial court's erroneous admission of evidence will not require
reversal when other such evidence was received without objection, either before or after
the complained-of ruling. Leday v. State, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998). 
Moreover, even if the evidence was admitted over a proper objection, it is harmless if the
same evidence is admitted without objection and proves the same fact. Hammons v.
State, 856 S.W.2d 797, 802 (Tex. App.-Fort Worth 1993, pet. ref'd). Any alleged error in
the admission of evidence is cured if the same evidence is admitted elsewhere in trial
without objection. Hudson v. State, 675 S.W.2d 507, 511 (Tex. Crim. App. 1984). 

 Motions in limine do not preserve error. See Webb v. State, 760 S.W.2d 263, 275
(Tex. Crim. App. 1988); Gonzales v. State, 685 S.W.2d 47, 50 (Tex. Crim. App. 1985); see
also Jaynes v. State, 216 S.W.3d 839, 850 (Tex. App.-Corpus Christi 2006, no pet.). This
is true whether the motion is granted or denied. Willis v. State, 785 S.W.2d 378, 384 (Tex.
Crim. App. 1989); Webb, 760 S.W.2d at 275. 

 The record reflects that appellant filed a motion in limine with the trial court as to the
recordings on September 6, 2006. Once the State offered the recordings for submission
into the record, appellant objected to their inclusion in the record based upon the best
evidence rule, see Tex. R. Evid. 1002, (16) and rule 401 of the rules of evidence, see Tex. R.
Evid. 401. Specifically, appellant argued that "there are portions of the tape that have
nothing to do with the offense or of the character or the relationship that should be
redacted before presented to the trier of fact." The trial court, in admitting the recordings
and allowing them to be played to the jury, implicitly overruled appellant's request in his
motion in limine. However, on appeal, appellant asserts that the trial court erred in
admitting the recordings because (1) it failed to review the recordings for irrelevant and
objectionable content, and (2) the prejudicial effect of the recordings far outweigh their
probative value pursuant to rules 403 and 404 of the rules of evidence. See Tex. R. Evid.
403, 404. We conclude that appellant waived his contention pertaining to rules 403 and
404 because he did not make a specific rule 403 or rule 404 objection to the trial court as
to the recordings. See Tex. R. App. P. 33.1(a)(1)(A); see also Roda v. State, No. 13-05-039-CR, 2006 Tex. App. LEXIS 4475, at *7 n.5 (Tex. App.-Corpus Christi May 25, 2006,
no pet.) (mem. op., not designated for publication) (noting that a party must make a rule
403 objection at trial to preserve error on appeal). 

 The remaining contentions in appellant's second issue pertain to relevancy of the
recordings and the trial court's alleged duty to review and redact the recordings for
irrelevant or objectionable content. Appellant's remaining contentions are inadequately
briefed because appellant has not provided this Court with any authority supporting his
contentions regarding relevancy and the trial court's duty to review the recordings and
redact. See Tex. R. App. P. 38.1(h). As such, appellant's second issue is waived.

C. Proportionality of Appellant's Sentence 

 By his third issue, appellant contends that the punishment assessed by the trial
court was disproportionate to the severity of the alleged offense, in violation of the Eighth
and Fourteenth Amendments of the United States Constitution. See U.S. Const. amends.
VIII, XIV. 

 To preserve error for appellate review, the complaining party must make a timely,
specific objection. Hull v. State, 67 S.W.3d 215, 217 (Tex. Crim. App. 2002); Turner v.
State, 805 S.W.2d 423, 431 (Tex. Crim. App. 1991); see Tex. R. App. P. 33.1(a) ("As a
prerequisite to presenting a complaint for appellate review, the record must show that: (1)
the complaint was made to the trial court by a timely request, objection, or motion . . . and
(2) the trial court: (A) ruled on the request, objection, or motion either expressly or implicitly
. . . ."). "'All a party has to do to avoid the forfeiture of a complaint on appeal is to let the
trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly
enough for the judge to understand him at a time when the trial court is in a proper position
to do something about it.'" Keeter v. State, 175 S.W.3d 756, 760 (Tex. Crim. App. 2005)
(quoting Lankston v. State, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992) (en banc)). 

 Texas courts have consistently held that even constitutional errors involving
disproportionate sentences can be waived by failing to object at trial. See Curry v. State,
910 S.W.2d 490, 497-98 (Tex. Crim. App. 1995) (citing Garcia v. State, 887 S.W.2d 846,
861 (Tex. Crim. App. 1994) (failure to raise Eighth Amendment objection at trial waives any
such claim on appeal)); Solis v. State, 945 S.W. 2d 300, 301 (Tex. App.-Houston [1st
Dist.] 1997, pet. ref'd) (holding that a claim of grossly disproportionate sentence violative
of the Eighth Amendment was forfeited by failure to object); Quintana v. State, 777 S.W.2d
474, 479 (Tex. App.-Corpus Christi 1989, pet. ref'd) (holding that failure to object to a
sentence as cruel and unusual forfeits error). Here, the record reflects that appellant did
not object to the imposition of punishment at trial nor did he raise the complaint in a motion
for new trial. See Tex. R. App. P. 33.1(a). We conclude that appellant failed to preserve
this complaint for review. (17) Accordingly, we overrule appellant's third issue. 

IV. Conclusion

 We affirm the judgment of the trial court.

 

 _______________________

 DORI CONTRERAS GARZA,

 Justice


Do not publish. 

Tex.R.App.P. 47.2(b)

Memorandum Opinion delivered and 

filed this the 17th day of April, 2008. 





1. The Eighth Amendment provides that no cruel and unusual punishment shall be inflicted on
individuals. U.S. Const. amend. VIII. It is applicable to the states by and through the Fourteenth Amendment. 
See Robinson v. California, 370 U.S. 660, 667 (1962).
2. It was undisputed at trial that Michelle Breaux was appellant's ex-wife. At trial, she was referred to
both as Michelle Holland and as Michelle Breaux, her maiden name.
3. It was established at trial that Jimmy Jones is Breaux's boyfriend.
4. Larry Parker testified that he is Breaux's next-door neighbor.
5. State's Exhibit 16 is labeled as "Phone recordings of Jack Holland, messages left on Michelle
Holland[']s [Breaux] phones."
6. The restitution amount was an amount suggested by the State and comprised the total damage done
to the property described in the indictment.
7. The State has not filed an appellate brief in response to appellant's contentions. See Siverand v.
State, 89 S.W.3d 216, 219 (Tex. App.-Corpus Christi 2002, no pet.) ("The Texas Rules of Appellate
Procedure require appellant to either file a brief or state that he no longer desires to prosecute the appeal. 
Tex. R. App. P. 38.8(b). However, there is no corresponding rule requiring the State to file a brief in response
to appellant's brief."). Therefore, it was not incumbent upon the State to file an appellate brief in response to
appellant's claim.
8. Michelle Breaux later testified that her residence was at 307 North Sixth Street.
9. State's Exhibits 3-10 and 12-15 were photographs taken by Deputy Trooper Hoffman, which
documented the extent of the damage described. State's Exhibit 4 documented the word "cunt" spray-painted
on the side of a home and a shed. State's Exhibit 7 depicted the following words on another side of the shed: 
"BACKSTABBER WHORE LIVES HERE." State's Exhibit 8 illustrates that the word "WHORE" was spray-painted on a bench. State's Exhibit 15 shows the words "FUCK YOU TOO" spray-painted on the back of a
Dodge pickup truck. 
10. Breaux notes that this incident transpired after Thanksgiving, but before Christmas in 2005.
11. The record does not show that charges were brought in regard to this incident.
12. Breaux noted that she did not consent to the spray painting and that there were approximately
$2,976.00 in damages to her vehicle. 
13. The record does not contain the actual compact disc of the telephone messages, but the record
clearly demonstrates that the compact disc was played in the presence of the jury and that appellant
repeatedly referred to Breaux as a "whore," "cunt," and "backstabber."
14. The record does not contain State's Exhibit 17, nor does it reflect that the State attempted to offer
Rowley's recounting of appellant's visit into evidence.
15. Appellant, however, noted that he was not mad at her on May 14th and May 15th, 2006.
16. On appeal, appellant does not advance trial counsel's best evidence rule objection. See Tex. R.
Evid. 1002. Therefore, we need not address this contention. See Tex. R. App. P. 38.1(h).
17. Appellant seems to argue that we have the power to review his sentence "to determine whether
such sentence passed constitutional muster though no objection was made during trial." However, in
accordance with rule 38.1(h) of the Texas Rules of Appellate Procedure, we will only consider contentions that
are supported by clear and concise arguments with appropriate citations to authorities and the record. Tex.
R. App. P. 38.1(h); Rhoades v. State, 934 S.W.2d 113, 119 (Tex. Crim. App. 1996) (en banc). Appellant has
not provided relevant authority to support this contention. Accordingly, we need not address this contention
because it is inadequately briefed.