

**NUMBER 13-06-532-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

JACK HOLLAND,                                                                    Appellant,

v.

THE STATE OF TEXAS,                                                          Appellee.

**On appeal from the 36th District Court of Aransas County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Benavides
Memorandum Opinion by Justice Garza**

After a jury trial, appellant, Jack Holland, was convicted of felony criminal mischief. *See* TEX. PENAL CODE ANN. § 28.03(a)(1) (Vernon Supp. 2007).  The trial court assessed punishment at two years' confinement, no fine, and $14,125.00 in restitution.  *See id.* § 28.03(b)(4)(A), (e); *Id.* § 28.06(b) (Vernon 2003).  By three issues, appellant contends that: (1) the evidence was legally and factually insufficient to support his conviction; (2) the trial

court erred in failing to review recorded telephone conversations between appellant and Michelle Breaux for relevancy and objectionable conduct, as requested in appellant's motion in limine; and (3) appellant's sentence is disproportionate to the severity of his offenses in violation of the Eighth and Fourteenth Amendments to the United States Constitution. *See* U.S. CONST. amends. VIII, XIV.[1]  We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On July 25, 2006, appellant was indicted for felony criminal mischief, a state jail felony.   *See* TEX. PENAL CODE ANN. § 28.03(a)(1).  The indictment provided, in relevant part:

### JACK HOLLAND

on or about the 15th day of May, A.D. 2006 and anterior to the presentment of this indictment, in the County and State aforesaid, did then and there intentionally or knowingly, in a continuing course of criminal conduct, damage or destroy tangible property, to wit:  a Honda automobile owned by Michelle Breaux,[2] a Ford Pickup and Bayliner boat owned by Jimmy Jones,[3] and a Dodge Pickup and Mazda automobile, owned by Larry Parker,[4] by cutting tires and painting said property items, without the effective consent of said property owners, and did thereby cause pecuniary loss of $1,500 more [sic] but less than $20,000 to the said owners . . . .

The jury trial commenced on September 5, 2006.  On September 6, 2006, prior to the submission of State's Exhibit 16, appellant tendered a motion in limine requesting the trial court "to order the State of Texas not to allude to or attempt to publish to the jury

---

[1] The Eighth Amendment provides that no cruel and unusual punishment shall be inflicted on individuals. U.S. CONST. amend. VIII.  It is applicable to the states by and through the Fourteenth Amendment. *See Robinson v. California*, 370 U.S. 660, 667 (1962).

[2] It was undisputed at trial that Michelle Breaux was appellant's ex-wife.  At trial, she was referred to both as Michelle Holland and as Michelle Breaux, her maiden name.

[3] It was established at trial that Jimmy Jones is Breaux's boyfriend.

[4] Larry Parker testified that he is  Breaux's next-door neighbor.

2

herein a compact disc which purportedly is an enhanced, perhaps edited, recording of a telephone answering machine in its unredacted state without first having the compact disc reviewed by the Court and objections to its introduction made by defense counsel and rulings made thereon."[5] In his motion in limine, appellant further states that the compact disc came to his attention in the "late morning hours of September 5, 2006," and the compact disc contains "voice messages left for Michelle Breaux by the Defendant, Jack Holland during March of 2006." The trial court denied appellant's motion in limine and admitted the recordings.

On September 6, 2006, the jury returned a verdict of guilty. Prior to trial, appellant had elected for the trial court to assess his punishment in the event that the jury found him guilty. The trial court assessed appellant's punishment at two years' confinement, no fine, and $14,125 in restitution.[6] *See* TEX. PENAL CODE ANN. § 28.03(b)(4)(A), (e); *Id.* § 28.06(b). Also on September 6, 2006, the trial court certified appellant's right to appeal the jury's verdict and the trial judge's sentence.

On September 13, 2006, appellant filed a motion for new trial, alleging that: (1) the admission of the recordings of messages left on Michelle Breaux's answering machine was highly prejudicial and that error was preserved by his motion in limine, *see* TEX. R. EVID. 400, 403; (2) the trial court erred in admitting the recordings without first reviewing its contents; (3) no evidence supports the trial court's restitution finding; and (4) there was insufficient evidence presented at trial to establish appellant's guilt. The record reflects

---

[5] State's Exhibit 16 is labeled as "Phone recordings of Jack Holland, messages left on Michelle Holland[']s [Breaux] phones."

[6] The restitution amount was an amount suggested by the State and comprised the total damage done to the property described in the indictment.

3

that the trial court did not rule on appellant's motion for new trial; therefore, it was overruled by operation of law. *See* TEX. R. APP. P. 21.8(a) ("The court must rule on a motion for new trial within 75 days after imposing or suspending sentence in open court."), 21.8(c) ("A motion not timely ruled on by written order will be deemed denied when the period prescribed in (a) expires."). On September 26, 2006, appellant filed his notice of appeal. This appeal ensued.

## II. STANDARD OF REVIEW

In a legal sufficiency review, we view the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Watson v. State*, 204 S.W.3d 404, 414-17 (Tex. Crim. App. 2006). The trier of fact is the sole judge of the facts, the credibility of the witnesses, and the weight given to testimony. *See* CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979); *Jackson*, 443 U.S. at 318-39; *Beckham v. State*, 29 S.W.3d 148, 151 (Tex. App.–Houston [14th Dist.] 2000, pet. ref'd). We do not reevaluate the weight and credibility of the evidence, whether circumstantial or direct, nor do we substitute our own judgment for that of the trier of fact. *Mosley v. State*, 141 S.W.3d 816, 821 (Tex. App.–Texarkana 2004, pet. ref'd); *Beckham*, 29 S.W.3d at 151. For both legal and factual sufficiency, we consider whether the jury was rationally justified in finding guilt beyond a reasonable doubt. *See Watson*, 204 S.W.3d at 414-17; *Beckham*, 29 S.W.3d at 151.

Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support

4

the conviction. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor; circumstantial evidence alone can be sufficient to establish guilt. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004). On appeal, both circumstantial and direct evidence cases are examined using the same standard of review. *Id.*

We measure the legal sufficiency of the evidence by the elements of the offense as defined by the hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *Adi v. State*, 94 S.W.3d 124, 131 (Tex. App.–Corpus Christi 2002, pet. ref'd). Such a charge would accurately set out the law, would be authorized by the indictment, and would not unnecessarily increase the State's burden of proof. *Malik*, 953 S.W.2d at 240. The elements of the charged offense in this case are: (1) appellant intentionally or knowingly damages or destroys the tangible property of the owner, and (2) does so without the owner's consent. *See* TEX. PENAL CODE ANN. § 28.03(a)(1) (Vernon Supp. 2007).

In a factual sufficiency review, we determine whether the evidence supporting the verdict is so weak that the verdict is clearly wrong and manifestly unjust or whether the verdict is against the great weight and preponderance of the conflicting evidence. *Watson*, 204 S.W.3d at 415. We will not reverse a case on a factual sufficiency challenge unless we can say, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the jury's verdict. *Id.* at 417.

5

## III. ANALYSIS

### A. Legal and Factual Sufficiency of the Evidence[7]

By his first issue, appellant contends that the evidence adduced at trial was legally and factually insufficient to support his conviction for felony criminal mischief. Specifically, appellant notes that his conviction was premised entirely on circumstantial evidence and "there were no eye-witnesses, finger prints or other credible forensic evidence linking Appellant to any of the acts as set forth in the indictment." Appellant also notes that it was impossible for him to have committed the charged offense because he was in Austin, Texas at the time the events occurred.

As previously mentioned, the State is required to prove the essential elements of a crime beyond a reasonable doubt. *See Malik*, 953 S.W.2d at 240. Moreover, the elements of felony criminal mischief are: (1) appellant intentionally or knowingly damages or destroys the tangible property of the owner, and (2) does so without the owner's consent. *See* TEX. PENAL CODE ANN. § 28.03(a)(1).

The State presented the testimony of Aransas County Deputy Sheriff Michael Hoffman to establish the timing of the incident and his initial investigation. Deputy Sheriff Hoffman testified that he responded to a complaint at 307 North Sixth Street on May 15, 2006.[8] He further testified that when he arrived at the scene at 2:59 a.m., he observed the

---

[7] The State has not filed an appellate brief in response to appellant's contentions. *See Siverand v. State*, 89 S.W.3d 216, 219 (Tex. App.–Corpus Christi 2002, no pet.) ("The Texas Rules of Appellate Procedure require appellant to either file a brief or state that he no longer desires to prosecute the appeal. TEX. R. APP. P. 38.8(b). However, there is no corresponding rule requiring the State to file a brief in response to appellant's brief."). Therefore, it was not incumbent upon the State to file an appellate brief in response to appellant's claim.

[8] Michelle Breaux later testified that her residence was at 307 North Sixth Street.

following: "a gold-colored Dodge pickup truck that had an orange-colored spray paint on the back. And I noticed a small convertible Mazda that had the tired slashed on it as well as the pickup truck." Deputy Sheriff Hoffman also noted that:

> [He] noticed a boat in the front yard had the tires slashed on the trailer, both tires. There was spray paint on the hull of the boat, itself. The boat cover was ripped or had been cut. The tires on his [Jimmy Jones's] pickup truck as well as Ms. Breaux's car had been sliced. A small Sea-Doo had the tires sliced on its trailer. There was a lot of spray paint on the vehicles. I noticed somebody took a can of blue house paint or some sort of paint and poured it over the hood of the vehicles as well as on a bench that was in the yard. And in several areas somebody had spraypainted "a cunt lives here" or "a man's cunt" I believe is what I took photos of.[9]

Finally, Deputy Sheriff Hoffman testified that he investigated the scene for about four hours and that the paint was semi-dry or still fresh when he began his investigation.

The record also contains the testimony of Michelle Breaux, appellant's ex-wife. Breaux testified that she and appellant had been married for three years, but that appellant left the home in September 2005. Breaux further testified that since appellant left the home in September 2005, his actions towards her had become threatening. Breaux noted that appellant repeatedly asked her for another chance to make the relationship work, and when she refused, appellant left threatening messages on her answering machine. In addition, Breaux described an incident that occurred during the winter of 2005 where appellant left his boat in Breaux's driveway, pushed off the trailer, and

---

[9] State's Exhibits 3-10 and 12-15 were photographs taken by Deputy Trooper Hoffman, which documented the extent of the damage described. State's Exhibit 4 documented the word "cunt" spray-painted on the side of a home and a shed. State's Exhibit 7 depicted the following words on another side of the shed: "BACKSTABBER WHORE LIVES HERE." State's Exhibit 8 illustrates that the word "WHORE" was spray-painted on a bench. State's Exhibit 15 shows the words "FUCK YOU TOO" spray-painted on the back of a Dodge pickup truck.

7

blocked her car.[10] A note was found inside the boat which Breaux recognized as appellant's handwriting. The note stated the following: "You fuck with me any more with your trashed out divorce, it will get worst [sic] than this. Don't fuck with me are [sic] you'll regret it, backstabber."[11] Breaux testified that after September 2005, appellant referred to her as "backstabber" on a regular basis.

Breaux testified that on May 15th, Jimmy Jones, her boyfriend, was at her house and that there was "a Honda car, a Ford pickup truck, and a boat parked outside the fence" at her residence. Breaux noted that she and Jones went to bed at "nine, ten o'clock maybe" and that when Jimmy got up at 3:00 a.m. to travel to Austin, he noticed that there was paint all over their vehicles. Breaux stated that the vehicles were in good condition—without spray paint—when she and Jones went to bed that evening and that she recognized the spray-painted handwriting as appellant's.[12]

Breaux further noted that she had problems with appellant every two to three weeks and as a result, she filed for divorce in January 2006. The divorce became final in March 2006. Breaux testified regarding an incident six weeks prior at the Fulton Inn where her vehicle's tires were slashed. She spoke to appellant about this incident, but he denied involvement.

Next, Jimmy Jones testified that he overheard several of appellant's alleged threatening phone calls to Breaux. In those calls, Jones noted that appellant "was calling

---

[10] Breaux notes that this incident transpired after Thanksgiving, but before Christmas in 2005.

[11] The record does not show that charges were brought in regard to this incident.

[12] Breaux noted that she did not consent to the spray painting and that there were approximately $2,976.00 in damages to her vehicle.

8

her a backstabber. I don't know whether I should say it. Called her a cunt; threatened her, verbally . . . there was yelling: 'Don't mess with me; I'll mess you up.'" Jones further testified that he was present when Breaux confronted appellant about the first slashing of her tires at the Fulton Inn. When he asked appellant "are you crazy?", appellant said, "At least I got her attention." Jones noted that when he and Breaux went to bed around midnight, there was no damage done to their vehicles; however, when he woke up at 3:00 a.m. and walked outside, there was extensive damage to the property. Jones corroborated the damage testimony provided by both Deputy Trooper Hoffman and Breaux. Jones testified that it cost him $4,000 for a new paint job for his truck and $1,100 to replace the slashed tires. Jones also stated that it cost him $2,500 for a new paint job for the boat, $1,100 for new tires on the boat trailer, and $200 to replace the tires on the Sea-Doo trailer. Finally, Jones testified that he did not give consent to anyone for his property to be damaged.

Larry Parker testified that he is Breaux's neighbor and that when he went to bed at 9:30 p.m. on May 15th, neither his vehicles nor the vehicles and property of Breaux and Jones were damaged. Parker testified that his Dodge pickup truck had foul language spray-painted on the tailgate, the tires were slashed on his pickup and his Mazda Miata, his Mazda Miata's ragtop was cut, and there was a wavy line spray-painted around the exterior of the Miata. Parker noted that it cost him about $1,000 to repair the pickup truck and about $2,600 to repair the Miata. Parker further testified that he was not aware of appellant's whereabouts that night and that he thought he was friends with both appellant and Breaux.

9

After excusing Parker, the State offered into evidence a compact disc containing various telephone messages left by appellant on Breaux's answering machine.[13]  In laying the predicate for the admission of the recordings on the compact disc, the State proffered the testimony of Officer James Beck, an investigator with the Aransas County Sheriff's Office.  Officer Beck testified that Breaux brought him original audiotapes of messages left on Breaux's answering machine.  Officer Beck further testified that he transferred the audiotapes to a compact disc because two of the audiotapes sounded "like chipmunks because her recorder was on a different speed than my recorder."  Officer Beck also noted that in transferring the audiotapes to the compact disc, he did not, in any way, alter the voices or words of the participants on the tapes.

At this time, appellant objected to the compact disc pursuant to the best evidence rule, *see* TEX. R. EVID. 1002, asserting that the compact disc was a recording of the answering machine messages and that the recording contained messages that should be redacted because they "don't have anything to do with the event or really with the attitude of Mr. Holland toward his wife."  Specifically, appellant asserted that the recordings included explicit references to oral sex and climaxing in Breaux's mouth, which appellant argued has no probative value and would inflame the jury.  In response to appellant's objection, the State noted that "copies are admissible same as the originals.  The only change that was made is a slower speed.  They are an exact replica of the tapes and it goes to show the relationship between the parties."  The trial court entered the recordings into evidence without redaction.

---

[13] The record does not contain the actual compact disc of the telephone messages, but the record clearly demonstrates that the compact disc was played in the presence of the jury and that appellant repeatedly referred to Breaux as a "whore," "cunt," and "backstabber."

Officer Beck testifed that he also investigated the incident but that he did not have the chance to either interview appellant or search his vehicle for forensic evidence linking appellant to the crime. However, Officer Beck stated that he did try to interview appellant within three weeks of the incident, but that he was unable to find appellant even after visiting his residence. Finally, Officer Beck testified that based on his experiences with appellant in the past and the recorded messages that appellant left for Breaux, he believed that despite the absence of fingerprints or any other forensic evidence, appellant was the individual who committed this crime.

After the State rested its case-in-chief, appellant called Jesse Holland, appellant's son, to testify. Jesse testified that from May 12th to May 17th, appellant was visiting him at his apartment in Austin. On the night in question, Jesse testified that he had been working all day until "8:00-ish." Upon returning home, Jesse noted that he and appellant "[j]ust hung around, watched T.V. We unloaded some more of his stuff into my room. Made dinner. That's about it." Jesse stated that he and appellant went to bed at 9:30 or 10:00 p.m. and that appellant slept on Jesse's floor beside his bed. Jesse further testified that his roommate, Andraya Rowley, was present that night and was watching a movie in the living room of the apartment. Jesse noted that he got up several times that night to use the restroom. Jesse further stated that when he would get up to use the restroom, appellant was always asleep on the floor beside his bed, and that he was forced to step over appellant in order to reach the restroom. Jesse also stated that appellant was present the next morning at about 7:00 a.m. and that he never saw appellant leave the apartment that night. Moreover, Jesse testified that appellant did not appear to have bloodshot eyes,

11

be fatigued, anxious or nervous, or have paint on any part of his body the morning of May 15th.

On cross-examination, Jesse revealed that he could not completely remember what happened on the night in question, but after discussing the events with appellant, he began to remember what had happened. Jesse also revealed that he had previously lied about appellant's whereabouts that night to his grandparents and to his brother.

Appellant then offered the testimony of Rowley, who recalled appellant visiting the apartment from May 12th to May 17th. Rowley noted that she went to bed at 11:00 p.m. on the night in question, and that she did not observe anyone leaving the apartment from the time Jesse returned home from work until the time she went to bed. Rowley testified that because of the acoustics of the apartment, she would have heard someone exit from the front door of the apartment. She also stated that on the morning of May 15th, appellant did not appear to have bloodshot eyes, be fatigued, anxious or nervous, or have paint on any part of his body.

On cross-examination, Rowley admitted that she kept her bedroom door closed once she retired for the evening. She also revealed that she discussed her testimony with Jesse prior to the trial. The State then showed Rowley what was marked as State's Exhibit 17, which was Rowley's written recount of appellant's visit to Austin.[14] Rowley admitted that in recounting appellant's visit to Austin, she did not mention May 14th or May 15th, which appeared to indicate that her memory of the events was hazy until her discussion with Jesse. Further, Rowley disclosed that there is an exit from Jesse's bedroom to the

_____

[14] The record does not contain State's Exhibit 17, nor does it reflect that the State attempted to offer Rowley's recounting of appellant's visit into evidence.

12

outside which she would not have necessarily heard someone using.

Finally, appellant himself testified that he had neither sent Breaux any threatening letters nor made threatening comments to her orally despite admitting that the voice in the recordings was his own. Appellant denied ever engaging in any acts that would be construed as oppressive or menacing towards Breaux, including the original slashing of Breaux's tires. Appellant admitted that he had used some foul language towards Breaux and that he was mad at her in May 2006.[15] Appellant denied involvement in the events of May 15th and denied the State's implication that he convinced Jesse to lie as to his whereabouts on May 15th. Appellant admitted that he had been angry at Jones in the past, but said that he was never angry at Parker.

The evidence demonstrates that appellant was angry with Breaux, his ex-wife, for leaving him and for dating Jones. After hearing all the evidence, the jury concluded that appellant had committed the actions described in the indictment. *See Beckham*, 29 S.W.3d at 151 (noting that the trier of fact is the sole judge of the facts, the credibility of witnesses, and the weight to be given to their testimony). The evidence suggests that appellant's anger often manifested itself in aggressive conduct, which included menacing telephone calls and messages, threatening notes, and the constant use of vulgar language to denigrate Breaux. Despite appellant's contention that he was in Austin on the evening in question, the testimony of Jesse and Rowley revealed that it was possible for appellant to leave the apartment undetected; that neither Jesse nor Rowley were aware of appellant's location at all times during the evening; and that neither Jesse nor Rowley

---

[15] Appellant, however, noted that he was not mad at her on May 14th and May 15th, 2006.

could recall the event of the night in question in detail until they were approached by appellant. We conclude that the jury was rationally justified in finding guilt beyond a reasonable doubt and that the evidence was legally and factually sufficient to support appellant's conviction. We overrule appellant's first issue.

## B. The Recorded Telephone Conversations

In his second issue, appellant contends that the trial court erred in failing to review the recorded telephone conversations between appellant and Breaux for irrelevant and objectional content according to his motion in limine. Appellant also argues that the recordings were improperly admitted into evidence because "the prejudicial effect of the contents of these recordings far outweighed their probative value since the strained relationship between Ms. Breaux and Appellant was otherwise clearly evident from her testimony . . . ." *See* TEX. R. EVID. 403, 404.

A trial court has wide discretion in its decision to admit or exclude evidence. *Montgomery v. State*, 810 S.W.2d 372, 392 (Tex. Crim. App. 1991); *Reyes v. State*, 69 S.W.3d 725, 735 (Tex. App.–Corpus Christi 2002, pet ref'd). An abuse of discretion occurs when the trial court acts arbitrarily or unreasonably, without reference to guiding rules or principles. *Montgomery*, 810 S.W.2d at 380. Therefore, the trial court's ruling must be at least within the zone of reasonable disagreement to prevent reversal. *Id.* at 391.

To preserve a complaint for appellate review, the record must show that a complaint was made to the trial court by a timely request, objection, or motion that stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the grounds were apparent from the

14

context. TEX. R. APP. P. 33.1(a)(1)(A); *Dixon v. State*, 2 S.W.3d 263, 265 (Tex. Crim. App. 1998). The objecting party must continue to object each time the objectionable evidence is offered. *Fuentes v. State*, 991 S.W.2d 267, 273 (Tex. Crim. App. 1999); *Ethington v. State*, 819 S.W.2d 854, 858-59 (Tex. Crim. App. 1991). To be timely, the objection must be made at the earliest possible opportunity. *Turner v. State*, 805 S.W.2d 423, 431 (Tex. Crim. App. 1991) (en banc). A trial court's erroneous admission of evidence will not require reversal when other such evidence was received without objection, either before or after the complained-of ruling. *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998). Moreover, even if the evidence was admitted over a proper objection, it is harmless if the same evidence is admitted without objection and proves the same fact. *Hammons v. State*, 856 S.W.2d 797, 802 (Tex. App.–Fort Worth 1993, pet. ref'd). Any alleged error in the admission of evidence is cured if the same evidence is admitted elsewhere in trial without objection. *Hudson v. State*, 675 S.W.2d 507, 511 (Tex. Crim. App. 1984).

Motions in limine do not preserve error. *See Webb v. State*, 760 S.W.2d 263, 275 (Tex. Crim. App. 1988); *Gonzales v. State*, 685 S.W.2d 47, 50 (Tex. Crim. App. 1985); *see also Jaynes v. State*, 216 S.W.3d 839, 850 (Tex. App.–Corpus Christi 2006, no pet.). This is true whether the motion is granted or denied. *Willis v. State*, 785 S.W.2d 378, 384 (Tex. Crim. App. 1989); *Webb*, 760 S.W.2d at 275.

The record reflects that appellant filed a motion in limine with the trial court as to the recordings on September 6, 2006. Once the State offered the recordings for submission into the record, appellant objected to their inclusion in the record based upon the best

15

evidence rule, *see* TEX. R. EVID. 1002,[16] and rule 401 of the rules of evidence, *see* TEX. R. EVID. 401.  Specifically, appellant argued that "there are portions of the tape that have nothing to do with the offense or of the character or the relationship that should be redacted before presented to the trier of fact."  The trial court, in admitting the recordings and allowing them to be played to the jury, implicitly overruled appellant's request in his motion in limine.  However, on appeal, appellant asserts that the trial court erred in admitting the recordings because (1) it failed to review the recordings for irrelevant and objectionable content, and (2) the prejudicial effect of the recordings far outweigh their probative value pursuant to rules 403 and 404 of the rules of evidence.  *See* TEX. R. EVID. 403, 404.  We conclude that appellant waived his contention pertaining to rules 403 and 404 because he did not make a specific rule 403 or rule 404 objection to the trial court as to the recordings.  *See* TEX. R. APP. P. 33.1(a)(1)(A); *see also Roda v. State*, No. 13-05-039-CR, 2006 Tex. App. LEXIS 4475, at *7 n.5 (Tex. App.–Corpus Christi May 25, 2006, no pet.) (mem. op., not designated for publication) (noting that a party must make a rule 403 objection at trial to preserve error on appeal).

The remaining contentions in appellant's second issue pertain to relevancy of the recordings and the trial court's alleged duty to review and redact the recordings for irrelevant or objectionable content.  Appellant's remaining contentions are inadequately briefed because appellant has not provided this Court with any authority supporting his contentions regarding relevancy and the trial court's duty to review the recordings and redact.  *See* TEX. R. APP. P. 38.1(h).  As such, appellant's second issue is waived.

---

[16] On appeal, appellant does not advance trial counsel's best evidence rule objection.  *See* TEX. R. EVID. 1002.  Therefore, we need not address this contention.  *See* TEX. R. APP. P. 38.1(h).

16

**C. Proportionality of Appellant's Sentence**

By his third issue, appellant contends that the punishment assessed by the trial court was disproportionate to the severity of the alleged offense, in violation of the Eighth and Fourteenth Amendments of the United States Constitution. *See* U.S. CONST. amends. VIII, XIV.

To preserve error for appellate review, the complaining party must make a timely, specific objection. *Hull v. State*, 67 S.W.3d 215, 217 (Tex. Crim. App. 2002); *Turner v. State*, 805 S.W.2d 423, 431 (Tex. Crim. App. 1991); *see* TEX. R. APP. P. 33.1(a) ("As a prerequisite to presenting a complaint for appellate review, the record must show that: (1) the complaint was made to the trial court by a timely request, objection, or motion . . . and (2) the trial court: (A) ruled on the request, objection, or motion either expressly or implicitly . . . ."). "'All a party has to do to avoid the forfeiture of a complaint on appeal is to let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it.'" *Keeter v. State*, 175 S.W.3d 756, 760 (Tex. Crim. App. 2005) (quoting *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992) (en banc)).

Texas courts have consistently held that even constitutional errors involving disproportionate sentences can be waived by failing to object at trial. *See Curry v. State*, 910 S.W.2d 490, 497-98 (Tex. Crim. App. 1995) (citing *Garcia v. State*, 887 S.W.2d 846, 861 (Tex. Crim. App. 1994) (failure to raise Eighth Amendment objection at trial waives any such claim on appeal)); *Solis v. State*, 945 S.W. 2d 300, 301 (Tex. App.–Houston [1st Dist.] 1997, pet. ref'd) (holding that a claim of grossly disproportionate sentence violative

of the Eighth Amendment was forfeited by failure to object); *Quintana v. State*, 777 S.W.2d 474, 479 (Tex. App.–Corpus Christi 1989, pet. ref'd) (holding that failure to object to a sentence as cruel and unusual forfeits error).  Here, the record reflects that appellant did not object to the imposition of punishment at trial nor did he raise the complaint in a motion for new trial.  *See* TEX. R. APP. P. 33.1(a).  We conclude that appellant failed to preserve this complaint for review.[17]  Accordingly, we overrule appellant's third issue.

## IV. CONCLUSION

We affirm the judgment of the trial court.

_____
DORI CONTRERAS GARZA,
Justice

Do not publish.
TEX.R.APP.P. 47.2(b)
Memorandum Opinion delivered and
filed this the 17th day of April, 2008.

---

[17] Appellant seems to argue that we have the power to review his sentence "to determine whether such sentence passed constitutional muster though no objection was made during trial."  However, in accordance with rule 38.1(h) of the Texas Rules of Appellate Procedure, we will only consider contentions that are supported by clear and concise arguments with appropriate citations to authorities and the record.  TEX. R. APP. P. 38.1(h); *Rhoades v. State*, 934 S.W.2d 113, 119 (Tex. Crim. App. 1996) (en banc).  Appellant has not provided relevant authority to support this contention.  Accordingly, we need not address this contention because it is inadequately briefed.